UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

|  |  |
|---|---|
| HADASSAH ACADEMIC COLLEGE, | :  Case No. 18 Civ. 2446 (AT) |
|  | : |
|  | :  ECF Case |
| Plaintiff, | : |
| -against- | : |
|  | : |
| HADASSAH, THE WOMEN'S ZIONIST | : |
| ORGANIZATION OF AMERICA, INC., | : |
|  | : |
| Defendant. | : |

-------------------------------------------------------------x


**PLAINTIFF HADASSAH ACADEMIC COLLEGE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS FOR: (i) RECONSIDERATION AND (ii) LEAVE TO REPLEAD AND FILE THE PROPOSED FIRST AMENDED COMPLAINT**


EISEMAN LEVINE LEHRHAUPT
& KAKOYIANNIS, P.C.
805 Third Avenue
New York, NY 10022
212-752-1000
*Attorneys for Plaintiff*
*Hadassah Academic College*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 4

I.   HAC'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED ........................ 4

    A.  Applicable Standard ......................................................................................... 4

    B.  HAC Is Entitled To Relief Under Fed. R. Civ. P. 59(e) .................................... 5

    C.  HAC Is Entitled To Relief Under Fed. R. Civ. P. 60(b) .................................... 6

    D.  The Court Erred In Finding That HAC Lacked Standing .................................. 7

II.  HAC SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT ..................... 11

    A.  Applicable Standard ....................................................................................... 13

    B.  Leave To Amend Is Warranted Under Both Rule 15(a) And Rule 16(b) ........ 14

        1.  Justice Requires Amendment .................................................................. 14

        2.  HAC Has Been Diligent In Bringing This First Motion To Amend ......... 14

            (a)  The Motion Is Timely .................................................................... 14

            (b)  New Evidence Adduced In Discovery Warrants Leave To Amend ... 16

        3.  Hadassah Cannot Satisfy Its Burden Of Showing Undue Prejudice ........ 16

            (a)  The Proposed Amendments Are Closely Related To The Original
                  Claims And Foreshadowed In Earlier Pleadings And Argument ........ 17

            (b)  Hadassah Has Ample Time To Meet The New Allegations And Claims ..... 18

        4.  HAC's Proposed Amendments Are Meritorious .................................... 18

            (a)  The Proposed First Amended Complaint Adequately Alleges That
                  HAC Has Standing ........................................................................... 19

            (b)  Each Cause Of Action Adequately States A Claim ......................... 20

III.   HADASSAH'S LAST-MINUTE ATTEMPT TO CLAW BACK HUNDREDS
       OF PAGES OF DOCUMENTS SHOULD BE REJECTED .............................................21

       A.   The Documents Hadassah Seeks To Claw Back Are Not Privileged .......................22

       B.   Hadassah's Request To Claw Back Should Be Rejected Because The
            Privilege Has Been Waived .........................................................................................25

            1.   Hadassah Failed To Take Reasonable Precautions To Protect The Privilege ....26

            2.   Hadassah Still Has Not Sought To Rectify Its Supposed Mistakes ...................28

            3.   The Scope Of Hadassah's Discovery Errors .......................................................29

            4.   Overarching Issues Of Fairness Requires A Finding Of Waiver .......................29

CONCLUSION ..........................................................................................................................30

TABLE OF AUTHORITIES

**Cases**

*Abbatiello v. Monsanto Co.*,
  571 F. Supp.2d 548 (S.D.N.Y. 2008) ............................................................ 17, 18

*Adams v. United States*,
  686 F. Supp. 417 (S.D.N.Y.1988) ................................................................ 5

*Affiliated FM Ins. Co. v. Liberty Mechanical Contractors, Inc.*,
  2013 WL 4526245 (S.D.N.Y. 2013) ............................................................ 13

*Alco Gravure, Inc. v. Knapp Found.*,
  64 N.Y.2d 458 (1985) ............................................................ 9, 10, 11

*Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*,
  232 F.R.D. 160 (E.D.N.Y. 2005) ............................................................ 25, 29

*Beljakovic v. Melohn Props., Inc.*,
  542 F.Supp.2d 238 (S.D.N.Y.2006) ............................................................ 5, 6

*Castro v. City of New York*,
  2010 WL 889865 (E.D.N.Y. Mar. 6, 2010) ............................................................ 13, 14

*Cat3, LLC v. Black Lineage, Inc.*,
  2015 WL 5559569 (S.D.N.Y. Sept. 21, 2015) ............................................................ 16

*Chavis v. Chappius*,
  618 F.3d 162 (2d Cir. 2010) ............................................................ 13

*Cresci v. Mohawk Valley Cmty. College*,
  693 F.App'x 21 (2d Cir. 2017) ............................................................ 14, 15

*Cruises v. Ins. Co. of N. Am.*,
  2003 WL 22100691 (S.D.N.Y. Sept. 11, 2003) ............................................................ 18

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
  282 F.3d 83 (2d Cir. 2002) ............................................................ 18

*E.E.O.C. v. Michael Cetta, Inc.*,
  2011 WL 5117020 (S.D.N.Y. Oct. 27, 2011) ............................................................ 16

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000) ................................................................ 5

*F5 Capital v. Pappas*,
    856 F.3d 61 (2d Cir. 2017) ................................................................ 15

*Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*,
    138 F.R.D. 479 (E.D. Va. 1991) ...................................................... 28, 30

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................ 13, 14, 19

*Frankel v. ICD Holdings S.A.*,
    939 F. Supp. 1124 (S.D.N.Y.1996) .................................................... 7

*In re Merkin*,
    2015 WL 10847318 (S.D.N.Y. Aug. 24, 2015) ............................ 5, 6

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) ............................................................ 13

*Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*,
    36 F. Supp. 2d 127 (E.D.N.Y. 1998) .......................................... 26, 30

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ...................................................... 13, 15

*Margel v. E.G.L. Gem Lab Ltd.*,
    2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) ................................ 16

*Melnitzky v. Rose*,
    305 F. Supp. 2d 349 (S.D.N.Y. 2004) ........................................ 6

*Monahan v. N.Y. City Dep't of Corrections*,
    214 F.3d 275 (2d Cir. 2000) ............................................................ 17

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) .............................................................. 6

*Nycomed U.S. Inc. v. Glenmark Generics Ltd.*,
    2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010) ............................ 16

*Peterson v. Syracuse Police Dept.*,
    467 Fed. Appx. 31 (2d Cir. 2012) ............................................ 5, 6

*PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.*,
   229 F.R.D. 450 (S.D.N.Y. 2005) ................................................................. 6

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
   1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) ................................... 25, 26

*S.E.C. v. Cassano*,
   189 F.R.D. 83 (S.D.N.Y. 1999)................................................................. 26

*Sagtikos Manor Historical Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.*,
   127 A.D.3d 1056 (2d Dep't 2015) ................................................... 10, 11

*Schonberger v. Serchuk*,
   742 F. Supp. 108 (S.D.N.Y.1990) ............................................................. 5

*Shamis v. Ambassador Factors Corp.*,
   187 F.R.D. 148 (S.D.N.Y. 1999) ............................................................... 5

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)........................................................................ 5

*Stonewell Corp. v. Conestoga Title Ins. Co.*,
   2010 WL 647531 (S.D.N.Y. Feb. 18, 2010) ..................................... 17, 18

*Thomas v. United States*,
   2005 WL 2104998 (S.D.N.Y. Sept. 1, 2005) .......................................... 5

*U.S. Airways, Inc.v. Sabre Holdings Corp.*,
   2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015)........................................... 13

*United States v. Int'l Bhd. of Teamsters*,
   247 F.3d 370 (2d Cir. 2001)..................................................................... 7

*United States v. Rigas*,
   281 F.Supp.2d 733 (S.D.N.Y.2003) ....................................................... 29

*USA Certified Merchs. LLC v. Koebel*,
   273 F. Supp.2d 501 (S.D.N.Y.2003) ....................................................... 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir.1992)............................................................... 5, 6

*Weissmann v. Freeman*,
   120 F.R.D. 474 (S.D.N.Y.1988) .............................................................. 7

## LAWS AND STATUTES

Local Civ. Rule 6.3 ................................................................................................1, 4, 30

Fed. R. Civ. P. 12(b)(6).................................................................................................20

Fed. R. Civ. P. 15(a)(2)..................................................................................1, 13, 14, 30

Fed. R. Civ. P. 16(b) ......................................................................................1, 13, 14, 30

Fed. R. Civ. P. 59(e) ........................................................................................1, 4, 6, 30

Rule 60(b)(1) and (2) ....................................................................................1, 4, 6, 7, 30

Restatement [Second] of Trusts § 391 comment c ........................................................9

4 Scott, The Law of Trusts § 391, at 3008-3009 3d ed.................................................9

Bogert, The Law of Trusts and Trustees § 414 [2d] rev ed ..........................................9

Plaintiff Hadassah Academic College ("HAC") respectfully submits this memorandum of law in support of: (i) its motion, pursuant to Fed. R. Civ. P. 59 & 60 and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, for reconsideration of the Court's Order, dated November 1, 2018 (Docket No. 44) ("Order"), granting defendant Hadassah, The Women's Zionist Organization of America, Inc.'s ("Hadassah") motion to dismiss and Judgment, dated November 2, 2018 (Docket No. 45); and (ii) its motion, pursuant to Fed. R. Civ. P. 15(a)(2) and 16(b), for leave to amend its complaint and permission to file the Proposed First Amended Complaint (the "PFAC").

In the Order, this Court ruled that "HAC has not demonstrated that it has a special interest in Hadassah's funds[,]" Order at 4, and therefore, pursuant to New York law, HAC lacked standing to bring this action.

## PRELIMINARY STATEMENT

Shortly before this Court issued its Order dismissing HAC's original Complaint (the "Complaint"), and months after the motion to dismiss was fully briefed, Hadassah produced documents which ███████████████████████████████████. These recently produced documents ████████████████████████████████ ████████████████████████████████████████████████ ███████████████████ For example, among the documents recently produced are:

- ███████████████████████████████████ ███████████████████████████████████ ██████████████████████████████.

- ████████████████████████████████ ███████████████████████████████████ ████████████████████████.

---

[1] For a period of time, HAC was also known as and did business as Hadassah College Jerusalem.



Moreover, ██████████████████████████████████████████

███████████████████████████████████████████████████

███████ (capitalization in original).  And, ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

Hadassah told this Court that "HAC is a potential beneficiary of Hadassah's charitable

purposes, but does not possess any special interest. . . . HAC cannot claim any greater right to

Hadassah's assets than other individuals or entities that . . . Hadassah supports."  Hadassah's

Memorandum of Law In Support of Its Motion to Dismiss (Docket Entry 28) ("Hadassah's

Mem.") at 6.  ███████████████████████████████████████████

███████████████████████████████████ Hadassah has always known that it is **required** to

forward the funds at issue to HAC, and no one else, and that HAC has a specific right and special

interest in these funds.

Hadassah's motion papers also made much of its supposed compliance with U.S. tax law.

Hadassah claimed that serving as a conduit for donations to HAC "*is expressly prohibited under*

*U.S. tax law*[,]" Hadassah's Mem. at 9 (italics in original), and that therefore, because it complies

with the tax law, "as a legal matter it has no obligation to forward funds to HAC."  Hadassah's

Mem. at 11.  ███████████████████████████████████████████

2

███████████████████████████████████

███████████████████████████████████

████████████████████████████████

This context provides the background for the current motion.  In granting Hadassah's motion to dismiss the Complaint, the Court ruled that "HAC has not demonstrated that it has a special interest in Hadassah's funds[,]" Order at 4, and therefore, pursuant to New York's Estates, Powers and Trusts Law, HAC lacked standing to bring this action.

As discussed in Point I below, the Court erred: (i) in its interpretation of New York law and (ii) in fact, by concluding that HAC had no special entitlement to these donations.  To the contrary, HAC is the **only** possible beneficiary of the funds at issue.  Moreover, ██████████

███████████████████████████████████

Hadassah misled the Court when it stated that "HAC cannot claim any greater right to Hadassah's assets than other individuals or entities . . .  that Hadassah supports."  Order at 4 (quoting Hadassah's Mem. at 6).

As discussed in Point II, HAC's motion for leave to amend should also be granted.  This is the first amendment sought by HAC, the motion is timely, and does not unduly prejudice Hadassah.  And, as detailed below, none of the proposed amendments are futile. They are based on sound facts ████████████████████████ and clarify the allegations in the Complaint to expressly address the specific issues identified by the Court in its recent Order. In addition to amplifying the allegations relating to HAC's special interest in the funds at issue, the PFAC also: (i) adds as a defendant an additional Hadassah entity, Hadassah Medical Relief Association, Inc., (ii) and adds a claim for promissory estoppel – based on the unambiguous commitments Hadassah made to provide HAC with the funds donated on its

behalf.  Allowing HAC the opportunity to amend would be affording it the opportunity to test its claims on their merits.

Finally, in Point III, HAC addresses a recent privilege dispute that has arisen between the parties.  As discussed below, Hadassah's last-minute attempt to claw back certain documents as privileged -- only after HAC advised Hadassah that it intended to use those documents in connection with this motion and therefore requested that Hadassah reconsider its confidentiality designations with respect to those documents -- should be rejected.  Hadassah's assertion of privilege appears to be nothing more than a last-ditch effort to prevent the Court from considering documents which expressly support HAC's allegations and establish its entitlement to recover on the claims asserted in this action.  The documents are not privileged.  And, even assuming any of the documents ever were privileged, the privilege has been waived.

## ARGUMENT

### I.      HAC'S MOTION FOR RECONSIDERATION SHOULD BE GRANTED

#### A.  Applicable Standard

HAC moves under Fed. R. Civ. P. 59 on two grounds: (1) the Court committed errors of law and fact when analyzing HAC's standing, and (2) newly discovered evidence further demonstrates that HAC has standing to pursue the claims set forth in the PFAC[2].  In the alternative, if HAC is not entitled to relief under Rule 59, it is entitled to relief under Rule 60.

As discussed *infra*, the error concerns "controlling decisions or data that [this Court] overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion

---

[2] Rule 59(e), "Motion to Alter or Amend a Judgment," provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Local Civil Rule 6.3, "Motions for Reconsideration or Reargument," applies to motions for reconsideration or reargument under Rule 59 of a court order determining a motion.

reached by [this C]ourt."  *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  The error is that HAC has adequately pled its special interest in funds earmarked by donors to Hadassah in their respective wills and other formation documents for the exclusive use of HAC.

Further, "new evidence previously not available [has] come[] to light."  Hadassah's internal documents admit that these funds were exclusively for HAC.  *In re Merkin*, 2015 WL 10847318, at 1 (S.D.N.Y. Aug. 24, 2015); *Peterson v. Syracuse Police Dept.*, 467 Fed. Appx. 31, 34 (2d Cir. 2012); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992)).

**B.  HAC Is Entitled To Relief Under Fed. R. Civ. P. 59(e)**

A motion for reconsideration will be granted if "the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.  *See Schonberger v. Serchuk,* 742 F. Supp. 108, 119 (S.D.N.Y.1990); *Adams v. United States,* 686 F. Supp. 417, 418 (S.D.N.Y.1988)."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).

"To be entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'  *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999)."  *Eisemann v. Greene,* 204 F.3d 393, 395, fn. 2 (2d Cir. 2000). *Accord Beljakovic v. Melohn Props., Inc.,* 542 F. Supp.2d 238, 244 (S.D.N.Y.2006); *In re: Merkin,*, 2015 WL 10847318, at *1 (S.D.N.Y. Aug. 24, 2015);  *see also Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999); *Thomas v. United States*, 2005 WL 2104998, at 2 (S.D.N.Y. Sept. 1, 2005)("[A] court ***should*** grant a motion for reconsideration if it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.")(quotation marks and citations omitted) (emphasis added).

Relief under Fed. R. Civ. P. 59(e) is also available where "new evidence previously not available comes to light." *In re Merkin*, 2015 WL 10847318, at 1 (S.D.N.Y. Aug. 24, 2015) (*quoting Peterson v. Syracuse Police Dept.*, 467 Fed. Appx. 31, 34 (2d Cir. 2012) (which cites *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992)). *See also Beljakovic*, 542 F. Supp. at 244; *USA Certified Merchs. LLC v. Koebel*, 273 F. Supp. 2d 501, 503 (S.D.N.Y.2003); *Melnitzky v. Rose*, 305 F. Supp. 2d 349, 350 (S.D.N.Y. 2004).

### C.  HAC Is Entitled To Relief Under Fed. R. Civ. P. 60(b)

Because HAC has made a timely motion under Rule 59(e) and Local Rule 6.3, HAC submits that it is not necessary for this Court to consider the alternative basis for relief, under Rule 60.  However, if the Court concludes that HAC is not entitled to relief under Rule 59(e) then it is entitled to relief under Rule 60(b)(1) and (2).

A party may seek relief from a judgment or order when (1) there has been  "mistake, inadvertence, surprise, or excusable neglect," and, (2) a party has found "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]"  Fed. R. Civ. P. 60(b)(1), (b)(2).

With regard to the motion under Rule 60(b)(1), HAC makes the same argument regarding the Court's errors of laws and fact as set forth above in the discussion about Rule 59(e).  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)(Rule 60(b) "should be broadly construed to do substantial justice." (internal citations and quotation marks omitted).  In *PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.,* the Court stated that Rule 60(b)(1) "encompasses judicial mistakes in applying the law" and that "relief is also appropriate where a court may have overlooked certain parties' arguments or evidence in the record." 229 F.R.D. 450, 452 (S.D.N.Y. 2005)(internal quotation marks and citations omitted).

Hadassah also seeks reconsideration under Rule 60(b)(2) due to new evidence that was previously unavailable.  In evaluating a motion under Rule 60(b)(2),

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir. 2001); *United States v. Int'l Bhd. of Teamsters*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998); *Frankel v. ICD Holdings S.A.,* 939 F. Supp. 1124, 1127 (S.D.N.Y.1996); *Weissmann v. Freeman,* 120 F.R.D. 474, 476 (S.D.N.Y.1988).

Here the newly discovered evidence is ██████████████████ ███████████████████████████████████████████ ███████  The documents were in existence at the time of the Hadassah's motion to dismiss for lack of standing/subject matter jurisdiction.  HAC was ignorant of the specific documents because they were in the exclusive control of Hadassah and were not produced until months after the motion to dismiss was fully briefed.  The evidence is in admissible form and is of such importance that it probably would have changed the outcome.  Finally, the evidence is not merely cumulative or impeaching.  The evidence goes to the heart of HAC's case in chief:  that the funds at issues were meant exclusively for HAC's benefit, Hadassah knew that at the time and HAC had a special entitlement to them.

### D.    The Court Erred In Finding That HAC Lacked Standing

In its Order, the Court made several significant errors of law and fact.

In its Complaint, HAC alleged, *inter alia*, the following:

4. **Hadassah** has donated funds directly to HAC, and it **has also served as a conduit for North American donors to make donations to HAC through Hadassah**.
    * * *
11. **Specifically, Hadassah has failed to forward funds donated to it for HAC's benefit** – in an apparent attempt to gain leverage and exert pressure over HAC with respect to the HAC Campus dispute.
12. Hadassah has also wrongfully withheld information from HAC concerning donations and donor-advised endowments, thereby making it impossible for HAC to verify exactly what funds are being improperly withheld by Hadassah and not being forwarded to HAC.
13. At a minimum, Hadassah has failed to forward donations to HAC and has conducted itself with an utter lack of transparency with respect to donations made to it for HAC's benefit.
14. HAC believes that Hadassah has also withheld funds and information related to bequests and annuities.
15. Hadassah continues to fail to provide pertinent information regarding these bequests and annuities, despite HAC's best efforts to obtain that information.
    * * *
17. Therefore, by way of this action, **HAC seeks**, *inter alia*: (i) **to recover the funds currently being held by Hadassah intended for HAC's benefit**, (ii) damages for Hadassah's breach of fiduciary duty, (iii) imposition of a constructive trust over assets held by Hadassah on HAC's behalf, and (iv) an accounting. (emphasis added)

The gravamen of the Complaint is that (i) certain funds were donated to Hadassah for the sole and express purpose of being disbursed to HAC thereby creating a special entitlement to these funds by HAC, (ii) Hadassah accepted the funds subject to the specific earmark, (iii) Hadassah has failed to comply with the donors' instructions, (iv) Hadassah has refused to remit the proceeds to HAC, and (v) Hadassah has failed to account for the moneys to HAC.

Despite the allegations of the Complaint that -- with respect to certain specific donations to Hadassah -- HAC is the **only** lawful beneficiary, the Court ruled that HAC "has not demonstrated that is has a special interest in Hadassah's funds."  Order, p. 4.  The Court concluded that HAC is only a "potential beneficiary," and that HAC has no greater right to Hadassah's funds than any other individual or entity who happens to fall within Hadassah's general mandate to assist those who support women's health and well-being, Israel or Jewish

values and community.  Order at 4.  The Court's conclusion that HAC has no special interest in the proceeds of certain specific, earmarked donations to Hadassah is simply incorrect.

The Court's misunderstanding of HAC's claim led it to mis-apply the controlling law. Specifically, the misunderstanding of the facts led the Court to make errors of law regarding HAC's legal standing to assert claims against Hadassah.

The controlling law is set forth in *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458 (1985).  The New York Court of Appeals stated that "[t]he general rule is that one who is merely a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust."  *Alco Gravure,* at 465 (internal citations omitted). The Court held that "the Attorney-General has the statutory power and duty [under EPTL 8-1.1(f)] to represent the beneficiaries of any disposition for charitable purposes."  *Id.* (internal citations omitted).

The *Alco Gravure* Court recognized that "[t]here is an exception to the general rule, however, when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number (*see,* Restatement [Second] of Trusts § 391 comment c; 4 Scott, The Law of Trusts § 391, at 3008-3009 [3d ed]; Bogert, The Law of Trusts and Trustees § 414 [2d rev ed])."  *Alco Gravure,* at 465.  New York's highest court reversed the lower courts and held that the plaintiffs had standing because they constituted a "a class of beneficiaries which is both well defined and entitled to a preference in the distribution of defendant's funds prior to the disputed amendment, viz., the employees of corporations in which Joseph P. Knapp was involved and the employees of successors to such corporations."  *Id.*  As in *Alco Gravure,* HAC has standing because it is not suing as a member of

a large, undefined group of potential beneficiaries. ██████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████ HAC has standing under *Alco Gravure*.

Indeed, HAC is the only entity with a special interest.

In *Sagtikos Manor Historical Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.,* 127

A.D.3d 1056, 1057 (2d Dep't 2015), New York's Appellate Division discussed how a court

determines the existence of a "special interest."  In *Sagtikos Manor*, the court held that "[t]his

'special interest' is found by looking to the trust's chartering documents to discern the purpose of

the trust, and whether there is a class of intended beneficiaries that is entitled to a preference and

is sharply defined and limited in number." *Id.* at 1057 (internal citations omitted).

While the *Sagtikos* Court considered the "foundational" documents which legally

established the charitable institution and set forth its mission statement it also held that the

original donor's intent as manifested in that donor's will can create a special interest in the funds

even if the funds pass through a foundation that has no such designation. *See id.* at 1057-58.

The court considered (i) the foundation's certificate of incorporation, as amended in 1987,

which stated that its purpose included educating the public about state and local history and

encouraging and sponsoring existing and future historical societies and (2) the will of the man

who created the foundation. *See id.* at 1057-58. The court found that neither document named the

plaintiff historical society as a beneficiary, nor did they name any beneficiary.  "Accordingly, the

Historical Society was not part of a class of potential beneficiaries of the Foundation that is

sharply defined and limited in number.  Therefore, it lacked standing to commence this action

[for an accounting]." *Sagtikos Manor*, 127 A.D.3d at 1057–58.

In this case, the Court erred by considering only the chartering documents of Hadassah.

Order, p. 4.  This was error because the Court should have considered ███████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

However, even if the Court was correct that a special interest can only be created in the

foundational documents, then the Court still committed error because the foundational

documents at issue here are the ██████████████████████ not the charter of Hadassah.  HAC

does not assert any special interest as a result of Hadassah's chartering documents. HAC asserts

a special interest ████████████████████████████████████████████████████

██████████████████████████████████

The Court should have held that the issue of HAC's standing requires examination of the

wills, deeds and other gift instruments or agreements pursuant to which donors gave money or

property to Hadassah subject to the condition (accepted by Hadassah) that Hadassah remit the

funds to HAC alone. *Alco Gravure,* 64 N.Y.2d at 465-66; *Sagtikos*, 127 A.D.3d at 1057–58.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ create a class

of potential beneficiaries that is sharply defined (HAC and only HAC) and limited in number

(one).  *See Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 465-66 (1985); *Sagtikos Manor*

*Historical Soc'y, Inc.*, 127 A.D.3d at 1057–58.  HAC has standing.

## II. HAC SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT

Regardless of whether the Court grants HAC's motion for reconsideration, HAC should

11

be permitted to replead and file the PFAC. The allegations of the PFAC make clear that HAC is the expressly designated beneficiary of the funds at issue in this litigation and that those funds belong to HAC -- not Hadassah.  As such, HAC has a special interest – and thus standing.

Moreover, these are not mere unsubstantiated allegations.[3] ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

Hadassah's recent document production also makes it abundantly clear that certain arguments Hadassah advanced in support of its motion to dismiss the original Complaint are demonstrably false.  Hadassah told this Court that under United States tax law it:

> cannot act as a 'conduit' to forward funds to a foreign nonprofit
> . . . U.S. tax law requires that Hadassah maintain discretion and
> control over the funds given to it.  In other words, while Hadassah
> 'may' forward to HAC funds for which its donors received a
> charitable deduction, it cannot be 'obligated' to do so."

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

The allegations of the PFAC more than sufficiently allege HAC's special interest in the funds at issue.  Accordingly, HAC has standing.  Because HAC's motion to amend is timely,

---

[3] Of course, at this stage of the litigation HAC is not required to prove its allegations. Nonetheless, as discussed further, Hadassah's internal documents do just that.

meritorious, and will not prejudice Hadassah, the motion should be granted.[4]

### A.  Applicable Standard

The Federal Rules of Civil Procedure permit plaintiffs to amend complaints at any time and such leave should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). The standard under Rule 15 has been described as "permissive" and "consistent with the 'strong preference for resolving disputes on the merits.'" *U.S. Airways, Inc.v. Sabre Holdings Corp.*, 2015 WL 8335119, at *3 (S.D.N.Y. Dec. 8, 2015) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). "If the underlying facts or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, a "motion to amend is generally denied only for 'futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *U.S. Airways*, 2015 WL 8335119, at *3 (quoting *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010)); *accord Foman*, 371 U.S. at 182.

Where granting leave would require amending a scheduling order, the Court has discretion to grant leave for good cause. *U.S. Airways*, 2015 WL 8335119, at *2 (citing Fed. R. Civ. P. 16(b)).  Similar to the Rule 15(a) standard, in considering whether good cause exists under Rule 16(b), courts consider (1) the diligence of the moving party, and (2) unfair prejudice to the defendants. *Kassner v. 2ndAve. Delicatessen Inc.,* 496 F.3d 229, 244-45 (2d Cir. 2007); *see Affiliated FM Ins. Co. v. Liberty Mechanical Contractors, Inc.,* 2013 WL 4526245, at *3 (S.D.N.Y. 2013); *see also Castro v. City of New York,* No. 06-CV-2253 (RER), 2010 WL

---

[4] On November 12, 2018, HAC's counsel conferred with Hadassah's counsel to see if Hadassah would consent to the filing of the PFAC.  Hadassah refused.

889865, at *2 (E.D.N.Y. Mar. 6, 2010) ("amendments could be permitted even where a plaintiff has not been diligent in seeking an amendment").

### B.  Leave To Amend Is Warranted Under Both Rule 15(a) And Rule 16(b)

### 1. Justice Requires Amendment

HAC's motion should be granted because "justice so requires."  The proposed amendments are responsive to the concerns the Court identified in its Order dismissing the original Complaint.  HAC has not delayed in seeking leave to amend, but rather filed the instant motion immediately after the Court dismissed the original Complaint. This is the first instance that HAC is seeking to amend the Complaint, demonstrating that the proposed amendments are not a product of bad faith nor are they a result of repeated failures to cure deficiencies. Further, the amendments clarify existing allegations and do not unduly prejudice Hadassah, who has not only been aware of these claims since the original Complaint was filed in March 2018, but had documents in its possession that proved the allegations. As detailed below, none of the proposed amendments are futile. They are based on sound facts -- ██████████████████ ████████████ -- and clarify the allegations in the Complaint to expressly address the specific issues identified by the Court in its recent Order. Allowing HAC to amend would be affording it the opportunity to test its claims on their merits. *See Foman*, 371 U.S. at 182.

### 2. HAC Has Been Diligent In Bringing This First Motion To Amend

HAC has diligently made this first motion for leave to amend.

### (a)  The Motion Is Timely

The Second Circuit has stated that "[t]he proper time for a plaintiff to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient.  Before learning **from the court** what are its deficiencies, the plaintiff cannot know

14

whether he is capable of amending the complaint efficaciously." *Cresci v. Mohawk Valley Cmty. College,* 693 F.App'x 21, 25 (2d Cir. 2017) (emphasis added).  Thus, the Second Circuit has repeatedly found it to be error for a court to "treat[] Plaintiffs' decision to stand by the complaint after a preview of Defendants' arguments—**in the critical absence of a definitive ruling**—as a forfeiture of the protections afforded by Rule 15."  *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190 (emphasis added); *see also Cresci,* 693 F.App'x at 25.  As the Court stated, such an approach is "premature and inconsistent with the course of litigation prescribed by the Federal Rules." *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190.

The Individual Practices of this Court do not change this analysis.  The Second Circuit recently discussed this Court's Individual Practices in *F5 Capital v. Pappas*, 856 F.3d 61, 89-90 (2d Cir. 2017).  In *F5 Capital*, the Second Circuit affirmed this Court's decision denying leave to replead.  However, the Second Circuit expressly based its decision on the grounds that the proposed amendment was futile.  As the Second Circuit stated, "[w]hatever the possible problems with the district court's individual practices might be as a general matter, in this case the district court was clearly justified in finding that F5's implicit request for amendment was futile."  *Id.* at 89.  The Second Circuit expressly stated that F5 failed to file a ". . . motion for leave to amend **after the district court dismissed the case**, to explain how it proposed to amend the complaint to cure its defects."  *Id.* at 90 (emphasis added).  It also noted that, "[t]o this day, F5 has not explained how it could amend the complaint to plead demand futility or otherwise survive a motion to dismiss."  *Id.*

In contrast to the plaintiff in *F5 Capital*, HAC diligently filed this motion, which explains exactly how its proposed amendments cure the supposed defects of the original Complaint, immediately after the Court issued its Order granting Hadassah's motion to dismiss the original

15

Complaint. As such, it is timely. And, in any event, this Court's Individual Practices allow for amendment upon a showing of good cause. HAC has more than made that showing here.

**(b) New Evidence Adduced In Discovery Warrants Leave To Amend**

This motion is also timely because newly adduced evidence both refines the existing claims, and gives rise to new claims. Courts routinely grant leave to amend when a [party] seeks to refine the [pleading] to reflect evidence obtained in discovery and expand on the existing claims. *See E.E.O.C. v. Michael Cetta, Inc.*, 2011 WL 5117020, at *1–2 (S.D.N.Y. Oct. 27, 2011) (granting leave to expand the class definition to cover an additional six years based on new information in discovery and depositions). Courts also routinely grant motions to add new claims brought within months of discovering new, relevant evidence. *See, e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 1257803, at *10-11 (E.D.N.Y. Mar. 26, 2010) (granting motion to amend to add inequitable conduct claim filed **three months** after newly discovered evidence); *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to add breach of contract claim **six months** after newly discovered evidence).

Here, Hadassah recently produced documents which definitively confirm the validity of the allegations contained in both the original Complaint and the PFAC. The parties were engaged in document discovery at the time the Court issued its Opinion and depositions have not yet commenced. Thus, the motion is well within the timeframe in which amendment is allowed.

### 3. Hadassah Cannot Satisfy Its Burden of Showing Undue Prejudice

As the party opposing the motion, Hadassah has the burden of establishing undue prejudice. *See, e.g.*, *Cat3, LLC v. Black Lineage, Inc.*, 2015 WL 5559569, at *4 (S.D.N.Y. Sept. 21, 2015). Hadassah cannot satisfy its burden.

As an initial matter, requiring Hadassah to defend the proposed allegations on the merits

is not prejudicial. There is no prejudice in forcing Hadassah to face the consequences of its own

actions.  Further, as discussed below, no prejudice exists because the proposed amendments

closely relate to the current claims, documents in Hadassah's possession prove the claims and

Hadassah has ample time to meet the new claims. *See, e.g.*, *Abbatiello v. Monsanto Co.*, 571 F.

Supp. 548 2d at 552–55 (S.D.N.Y. 2008) (granting leave where adding allegations would not

unduly prejudice defendant because much of the information was likely compiled for, or

contained in, documents that defendant had in its possession and amendment would not

significantly delay the litigation because, *inter alia*, discovery was not complete, and the parties

were not ready to prepare summary judgment motions).

### (a) The Proposed Amendments Are Closely Related To The Original Claims And Foreshadowed In Earlier Pleadings And Argument

"Courts in this district have consistently granted motions for leave to amend a complaint

where facts and allegations developed during discovery are closely related to the original claim

and are foreshadowed in earlier pleadings." *Stonewell*, 2010 WL 647531, at *2 (collecting

cases); *see also Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)

(affirming no prejudice in granting motion to amend filed at summary judgment because counsel

was aware of underlying facts before summary judgment motion was filed).

HAC's proposed amendments are extensions of the pending allegations and claims,

overlap significantly with them, and are supported by new evidence which was in Hadassah's

sole possession.  From the start, HAC has consistently claimed that Hadassah abused its

relationship with HAC and improperly failed to forward funds and provide information to HAC.

███████████████████████████ Hadassah has known for years -

-- and contrary to its representations to this Court -- that the funds at issue belong to HAC and it

is **obligated** to forward those funds to HAC. Hadassah cannot claim that it would be prejudiced

simply because discovery has revealed additional evidence of wrongdoing that was unknown to HAC when it commenced this action.

**(b) Hadassah Has Ample Time To Meet The New Allegations And Claims**

When assessing prejudice, a key consideration is whether the non-moving party has time to meet the proposed amendments. *See, e.g.*, *Abbatiello*, 571 F. Supp. 2d at 552–55; *Fla. Day Cruises v. Ins. Co. of N. Am.*, 2003 WL 22100691, at *2 (S.D.N.Y. Sept. 11, 2003). It is expected that amendments will "often require some amount of additional discovery and investigation by the parties[,]" and therefore, "[t]his fact does not automatically constitute undue prejudice[,]" especially where "the parties have sufficient time to conduct appropriate discovery and investigation related to the new allegations." *Stonewell*, 2010 WL 647531, at *2–3 (granting motion to amend, finding **month before trial** sufficient time for additional discovery and investigation). Here, at the time the Court issued its Order granting Hadassah's motion to dismiss, discovery was still ongoing, and months from finishing. Hadassah has still not completed its document production, not a single deposition has taken place, nor have the parties made expert disclosures, and the parties are not close to dispositive motions or trial. Thus, Hadassah would have ample opportunity to formulate an appropriate defense.

**4. HAC's Proposed Amendments Are Meritorious**

Amendment is futile only if the proposed pleading cannot withstand a motion to dismiss. *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (reversing denial of motion to amend because plaintiff "adequately set[] forth specific facts, which if proven, can support a [claim]"). The proposed amendments make it abundantly clear that HAC has a special interest in the funds at issue. Therefore, HAC has standing to pursue these claims. And, the allegations of the PFAC plainly state claims for the causes of

action asserted.  Because the proposed amendments are "proper subject[s] of relief," HAC

should be "afforded an opportunity to test [its] claim on the merits." *Foman,* 659 F.3d at 182.

**(a) The Proposed First Amended Complaint
Adequately Alleges That HAC Has Standing**

The sole basis upon which this Court dismissed HAC's original Complaint was the

Court's conclusion that the Complaint failed to allege HAC's special interest in the funds at

issue.  As discussed, the PFAC amplifies the allegations of the original Complaint and makes it

clear that HAC has a special interest in the funds at issue, and thus, HAC has standing.

For example, based on Hadassah's own documents, the PFAC alleges, *inter alia*:



Not only does the PFAC adequately allege standing, but the documents it references

actually confirm that the funds at issue belong to HAC -- they do **not** "belong entirely to

Hadassah" as this Court erroneously concluded based on Hadassah's representations.   Order at

5.  And, the allegations of the PFAC also plainly plead that HAC is the intended – not incidental

– beneficiary, PFAC ¶¶ 2-21, 53-80, again, despite what Hadassah previously argued to this

Court.  Order at 5.  As such, HAC has standing to bring the claims asserted in the PFAC.

### (b) Each Cause Of Action Adequately States A Claim

Because this Court dismissed the Complaint for lack of standing, it declined to consider

Hadassah's alternative argument that the Complaint should be dismissed for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Order at 6-7.  However, none of the

arguments advanced by Hadassah in its original motion to dismiss establish that amendment

would be futile here.  Indeed, Hadassah's primary argument in support of its 12(b)(6) motion,

and the heading of its lead point in the 12(b)(6) portion of its memo is: "**As a Matter of Law,

the Funds Cannot and Do Not Belong to HAC and Hadassah is Not Legally Obligated to

Convey Them to HAC**."  Hadassah Mem. at 8 (emphasis in original).  As discussed above, this

contention is demonstrably false.

And, while Hadassah contends it does not owe any fiduciary duty to HAC,



PFAC ¶ 150. In any event, the allegations of the PFAC

adequately allege the existence of fiduciary relationship and that Hadassah breached its duties

under that relationship.

Finally, because of the express and unambiguous commitments Hadassah made to

forward the funds it owed to HAC, the PFAC also includes a claim for promissory estoppel.

### III.     HADASSAH'S LAST-MINUTE ATTEMPT TO CLAW BACK HUNDREDS OF PAGES OF DOCUMENTS SHOULD BE REJECTED

At 5:04 p.m. this past Friday (November 9th), Hadassah's counsel sent an e-mail to counsel for HAC.[5]  The e-mail included a chart identifying approximately 200 pages of documents that Hadassah was seeking to claw back as privileged.  This claw back request from Hadassah did not come out of the blue – it was in response to an e-mail from HAC's counsel earlier in the week.  In an attempt to minimize the need for filing portions of this motion under seal, counsel for HAC contacted Hadassah's counsel to ask that it reconsider certain confidentiality designations it made pursuant to the Stipulated Protective Order (Docket Entry 43) which governs discovery.  HAC identified certain documents Hadassah designated as "Confidential" or "Attorneys Eyes Only" which it anticipated using or referencing in connection with this motion.  Consistent with this Court's general guidance that parties should use their best efforts to minimize the need for filing under seal, HAC asked Hadassah whether it would allow HAC to file those documents on the public docket.  Hadassah has not consented to the public filing of any of the documents identified by HAC.  Instead, just days before the deadline to file a motion pursuant to Local Civil Rule 6.3, Hadassah sent its e-mail of last Friday evening and advised HAC that it wanted to claw back approximately 200 pages – more than 70% – of the pages that HAC had identified to Hadassah.

---

[5] For some reason, Hadassah's counsel chose to send his e-mail to only one of the three attorneys representing HAC -- even though in an earlier e-mail from the same day (regarding the same subject) he appropriately included all three attorneys representing HAC.  Because the HAC attorney he sent his e-mail to is a Sabbath observer, and because the e-mail was sent shortly after sundown on Friday evening, none of HAC's attorneys were able to see the e-mail until Saturday night.  HAC assumes the decision to remove two of its three attorneys from the e-mail, and the timing of the e-mail, is mere coincidence, rather than sharp practice.

As discussed below, the documents identified by Hadassah are not privileged, and even if they were at one point, that privilege has been waived. Hadassah's last-minute assertion of privilege appears to be nothing more than a last-ditch effort to prevent the Court from considering documents which expressly support HAC's allegations and establish its entitlement to recover on the claims asserted in this action. Hadassah's assertion of privilege with respect to these documents should be rejected.

### A.  The Documents Hadassah Seeks To Claw Back Are Not Privileged

Under both the case law and the Stipulated Protective Order governing discovery in this action, Hadassah bears the burden of establishing that the documents it seeks to claw back are privileged. Stipulated Protective Order ¶ 13 ("The disclosing party retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information.").

Hadassah has asserted a privilege and sought to claw back four documents that HAC ultimately decided to use in connection with this motion and in the PFAC.[6]  For example, Hadassah asserts that documents Bates stamped H00042245-94 are privileged because "the spreadsheet was created with input from litigation counsel and constitutes attorney client communication." This is the extent of the explanation provided by Hadassah. Hadassah's brief explanation for why these approximately fifty pages are privileged defies logic.

*First*, the "spreadsheet" to which Hadassah refers actually first appears in this Bates range as a ███████████████████████████

---

[6] Due to space constraints, HAC's discussion here will focus on the four documents it ultimately chose to use in connection with this motion and in the PFAC.  However, for purposes of providing the Court with a complete record, the full set of documents Hadassah is seeking to claw back is attached as Exhibit 2 to the Levine Dec. HAC is prepared to discuss in more detail why none of these documents are privileged or subject to claw back in a supplemental submission, should the Court deem it appropriate.

███████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████ There is no request for legal advice.  There is

no advice given nor any indication what, if any, role "litigation counsel" played in the creation of

████████ and whether that involvement would even constitute a privileged communication.

*Second*, the "spreadsheet e-mail" is all of five pages long.  Hadassah does not even

attempt to explain why the other 40 plus pages identified in this Bates range are privileged.  The

other documents in this range include: ████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Plainly, none of these documents are privileged.

The same analysis applies to the documents Bates stamped H00042340-80.  Once again,

Hadassah asserts that these forty pages of documents are privileged because "the spreadsheet

was created with input from litigation counsel and constitutes attorney client communication."

In fact, ███████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ These documents are not privileged.

Like the two ranges discussed above, the same analysis also applies to the documents Bates stamped H00042728-72 which Hadassah once again asserts are privileged because "the spreadsheet was created with input from litigation counsel and constitutes attorney client communication." ████████████████████████████████████████

████████████████████████████████████████████████████

Three of the four documents which Hadassah has sought to claw back and which HAC references in its motion papers and attaches as Exhibits to its PFAC appear in the above Bates ranges.  Specifically, they are: ████████████████████████████████████████

████████████████████████████████████████████ PFAC;

██████████████████████████████████████████████████████

██████████████████████████████████████ PFAC; ███████████

██████████████████████████████████████████████

████████████████████████████████████ PFAC.  None of these documents are privileged.  However, these documents demonstrate that ████████████████████████

████████████████████████████████████████████

The final document relevant to this motion which Hadassah is seeking to claw back is a spreadsheet which is similar, although not identical, to the one contained in the Galdamez e-mail discussed above.  Yet again, Hadassah asserts that "the spreadsheet was created with input from

litigation counsel and constitutes attorney client communication." And, once again, Hadassah

provides no support for its assertion. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ The document is not privileged.

### B. Hadassah's Request To Claw Back Should Be Rejected Because The Privilege Has Been Waived

Even if any of the documents were once privileged, Hadassah's actions have caused the

privilege to be waived.  The general rule in New York is that "inadvertent disclosure of

documents containing legal advice may constitute a waiver of the attorney-client privilege."

*Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 161 (E.D.N.Y. 2005)

(citations omitted).  While that rule can be modified by protective orders which provide that

inadvertent production is not a waiver, the Stipulated Protective Order in this case is more

narrowly drawn.  The Stipulated Protective Order states that

> [i]f . . . despite a producing person having taken **reasonable steps** to prevent the
> disclosure of information that it claims is subject to a claim of attorney-client
> privilege, . . . a party inadvertently discloses information subject to a claim of
> attorney-client privilege  . . . ("Inadvertently Disclosed Information") such
> disclosure, in itself, shall not constitute or be deemed a waiver or forfeiture of a
> claim of privilege . . . with respect to the Inadvertently Disclosed Information.

Stipulated Protective Order ¶ 12 (emphasis added).  Because the Stipulated Protective Order

requires the producing party to demonstrate that it took "reasonable steps" to protect the

privilege, this case is governed by New York's common law regarding inadvertent waiver.

Where, as here, a protective order requires a party to take "reasonable steps" to protect

attorney-client communications, a failure to take such steps will result in a waiver of the

privilege.  In *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* 1997 WL 736726, at 3

(S.D.N.Y. Nov. 26, 1997), the receiving party argued that the stipulated protective order covering inadvertent waiver should incorporate the caselaw requirement that the producing party must take "reasonable steps to maintain the confidentiality of the disclosed documents."  The protective order in that case contained no requirement of "reasonable steps."  The court rejected the receiving party's argument, holding that to impose the reasonableness requirement would mean that the dispute was governed by caselaw and not by the more forgiving terms of the protective order.  In contrast, here the Stipulated Protective Order expressly incorporates the requirement of reasonable steps by the producing party.  Accordingly, this dispute is governed by caselaw regarding waiver through inadvertent disclosure.

"Inadvertent disclosure will be deemed waiver when caused by the disclosing party's inadequate precautions to maintain the confidentiality of the privileged communication." *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.,* 36 F. Supp. 2d 127, 130 (E.D.N.Y. 1998).  In determining whether the production was inadvertent, courts consider (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness." *S.E.C. v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y. 1999) (internal citations and quotation marks omitted).

Hadassah has waived the privilege here because it failed to take reasonable precautions to prevent inadvertent disclosure, it still has not taken reasonable steps to rectify its errors, the scope and extent of disclosure is broad, and fairness dictates that the privilege should be waived.

### 1.  Hadassah Failed To Take Reasonable Precautions To Protect The Privilege

Hadassah did not take reasonable precautions to protect the privilege.  *First*, it produced copies of supposedly privileged documents multiple times.  For example, Hadassah produced:

- A document with the file name ███████████████████ ████████ Hadassah produced this document nine times. Hadassah also produced nearly identical – if not actually identical – versions of this document another eleven times.  Thus, this supposedly privileged document was included in Hadassah's production at least **twenty times**.

- A document with the file name ███████████████████ Hadassah produced this document six times. Hadassah also produced substantially similar versions of this document another ten times.  Thus, this supposedly privileged document was included in Hadassah's production at least **sixteen times**.

- An ████████████████████████████ which Hadassah is now claiming to be privileged.  This chain appears at least **five times** in Hadassah's production.

- The █████████████████████████████ ████████████ which Hadassah is now claiming to be privileged.  This document appears at least **five times** in Hadassah's production.

Multiple other examples abound. And, the conclusion is inescapable.  By producing the same data contained in different documents each of which should have been individually reviewed (*i.e.*, 20 separate reviews of 20 separate documents), Hadassah has demonstrated that it failed to take reasonable steps to protect the information.

*Second*, some of the allegedly privileged documents are marked "attorney's eyes only." This designation -- which was used on only a handful of Hadassah's documents -- means that someone on the producing side took the additional step of actually studying the document to make a determination that it should be produced but restricted to only HAC's lawyers.  The designation of "attorney's eyes only" demonstrates that the document was individually reviewed and was determined to be non-privileged (*i.e.*, it should be produced).  That "attorney's eyes only" documents are now claimed to be privileged is further evidence of Hadassah's carelessness.

*Third*, Hadassah asked for and received extra time to complete its document production. Therefore, it had more than sufficient time to perform a quality check on its production to minimize the chance of any inadvertent disclosure.

27

**2.   Hadassah Still Has Not Sought To Rectify Its Supposed Mistakes**

Another indicia that Hadassah's "conduct was so careless as to suggest that it was not concerned with the protection of the asserted privilege" or that it is not serious about the designations is that Hadassah has only sought to claw back the specific documents (and, in some insistences their "families," e.g., an email and its attachment) identified by HAC which allegedly contain confidential attorney-client communications.  Hadassah has not sought to claw back other documents -- not identified by HAC for use in its motion -- which contain the same allegedly privileged information.  Or, to put it another way, even if Hadassah is allowed to claw back the 16 spreadsheets it has listed as privileged, HAC will still have 28 other Hadassah documents containing the identical or substantially identical data.  Indeed, it appears that Hadassah is less concerned with preserving the confidentiality of attorney-client communications than it is with frustrating HAC's attempts to prosecute its case.  "Given that one privileged document had been inadvertently disclosed, a prudent party would have reviewed the documents produced once again to ensure that other privileged documents were not overlooked."  *Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D. Va. 1991) (producing party deemed to have waived attorney-client privilege through carelessness which resulted inadvertent disclosure.)

For example, Hadassah produced a spreadsheet that was identified 7 separate times by HAC ███████████████████████████ (*See* H00042238; H00042245; H00042250; H00042340; H00042628; H00042633).  HAC identified all 7 because it was not sure which one it wanted to use.  While Hadassah is attempting to claw back these 7 documents identified by HAC, Hadassah has made no effort to claw back the other 13 times this particular spreadsheet has been produced.  This particular spreadsheet was produced both as a standalone

excel spreadsheet as well as embedded into Hadassah emails, but the information remains the same.  Further, 18 of these documents has been marked "Attorneys' Eyes Only," and two were marked "Confidential," indicating a higher level of scrutiny by Hadassah before producing them.

The same issues arise with multiple other documents as well.

In sum, Hadassah did nothing at all to rectify its errors until after HAC advised Hadassah that HAC wanted to use certain documents.  Even when Hadassah's attention was drawn to the issue, Hadassah continued to do nothing and thus, the privilege has been waived.

### 3.   The Scope Of Hadassah's Discovery Errors

Another factor to be considered is the relationship between the number of the documents subject to the claw back motion and the total number of documents produced.  *Atronic Int'l, GMBH*, 232 F.R.D. at 164.  In *Atronic Int'l, GMBH*, the numerator was the number of privileged documents and the denominator was the total number of documents produced.  Here, the numerator is the number of documents Hadassah wants to claw back, and the denominator is the number of documents identified by HAC for potential use on this motion.  That ratio works out to 71% of the total pages of documents at issue.  The relevant denominator is the number of documents HAC sought to have redesignated as non-confidential because Hadassah did not raise the issue of claw back based on its review of its entire production.  Because Hadassah is trying to claw back 71% of the pages at issue, it should be deemed to have waived the privilege.

### 4.   Overarching Issues Of Fairness Require A Finding Of Waiver

The final factor is "the overarching issue of fairness." *Atronic Int'l, GMBH,* 232 F.R.D. at 164 (citing *United States v. Rigas,* 281 F.Supp.2d 733, 738 (S.D.N.Y.2003)).  Here, fairness requires a finding of waiver.  The documents in question directly disprove the factual basis of Hadassah's motion to dismiss and prove the allegation of HAC's complaint.  As discussed

above, Hadassah represented to this Court that HAC is simply another potential beneficiary of its charity and therefore has no standing to bring the claims asserted in the Complaint. ▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ "It is seldom 'fundamentally unfair' to allow the truth to be made public, and under the circumstances outlined above [i.e., carelessness], the Court finds that it would not be fair to reward [the producing party's] carelessness with a protective order." *Fed. Deposit Ins. Corp.,* 138 F.R.D. at 483.

Where a party tells the court one thing and simultaneously invokes the attorney-client privilege to shield documents that say another thing, the court is justified in holding that the factor of fairness weighs heavily in favor of finding a waiver. *See Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 134 (E.D.N.Y. 1998). In that case, the "producing" party inadvertently filed with the court a letter between lawyer and client and then moved for a protective order. The court denied the motion and found that, as a matter of fairness, the privilege should be deemed waived because, *inter alia*, the letter's statement that the case has been quiet for months belied the party's assertion to the court that it had been actively litigating the case. *Id.*

## CONCLUSION

For the reasons stated above, HAC's motions: (i) pursuant to FRCP 59 & 60 and Rule 6.3 of the Local Rules, for reconsideration of the Court's Order, dated November 1, 2018; and (ii) pursuant to FRCP 15(a)(2) and 16(b), for leave to amend its complaint and permission to file the PFAC, should be granted in all respects. Furthermore, the Court should reject Hadassah's attempt to claw back certain documents it has already produced to HAC.

Dated: November 15, 2018

EISEMAN LEVINE LEHRHAUPT
& KAKOYIANNIS, P.C.


By:_____/s/ Eric R. Levine_____
        Eric R. Levine
        (elevine@eisemanlevine.com)
        Eric Aschkenasy
        (easchkenasy@eisemanlevine.com)
        Craig Karger
        (ckarger@eisemanlevine.com)
805 Third Avenue
New York, New York 10022
212-752-1000
*Attorneys for Plaintiffs*