UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                              : Case No. 18 Civ. 2446 (AT)
HADASSAH ACADEMIC COLLEGE,           :
                                                                              : ECF Case
                                         Plaintiff,    :
  -against-                                                  :
                                                                               :
HADASSAH, THE WOMEN'S ZIONIST      :
ORGANIZATION OF AMERICA, INC.,       :
                                                                               :
                                        Defendant.   :
---------------------------------------------------------------x


**PLAINTIFF HADASSAH ACADEMIC COLLEGE'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTIONS FOR: (i) RECONSIDERATION AND (ii) LEAVE TO
REPLEAD AND FILE THE PROPOSED FIRST AMENDED COMPLAINT**


EISEMAN LEVINE LEHRHAUPT
& KAKOYIANNIS, P.C.
805 Third Avenue
New York, NY 10022
212-752-1000
*Attorneys for Plaintiff*
*Hadassah Academic College*

**TABLE OF CONTENTS**

I. BOTH THE COMPLAINT AND PFAC ADEQUATELY ALLEGE STANDING..............1

   A. The Court Did Not Accept The Disputed Factual Allegations Of The Complaint...........1

   B. Hadassah Misstates The Law Of Standing For Beneficiaries Of Charitable Gifts...........2

   C. The Gift Agreements And Gift Protocol Do Not Limit HAC's Special Interest..............5

II. HAC SHOULD BE GRANTED LEAVE TO AMEND..........................................................8

   A. The Standard To Be Applied On A Motion To Amend......................................................8

   B. The Only Issue In Dispute Is Whether The Proposed Amendment Is Futile....................9

   C. The Proposed Amendment Is Not Futile .......................................................................10

      1. Amendment Is Not Futile Under Fed. R. Civ. P. 12(b)(1)..................................10

      2. Amendment Is Not Futile Under Fed. R. Civ. P. 12(b)(6)..................................12

III. HADASSAH'S CLAW BACK ATTEMPT SHOULD BE REJECTED ............................12

CONCLUSION................................................................................................................................15

1

**TABLE OF AUTHORITIES**

**Cases**

*Alco Gravure, Inc. v. Knapp Found.*,
  64 N.Y.2d 458 (1985) ................................................................................................. 2-3, 5, 7

*Audio Emotion S/A v. McIntosh Group, Inc.*,
  Case No. 15-cv-5735, 2017 WL 6492506 (S.D.N.Y. Jan. 11, 2017)......................................... 9

*Becnel v. Deutsche Bank AG*,
  838 F.Supp.2d 168 (S.D.N.Y. 2011) ...................................................................................... 8

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006).................................................................................................... 7

*Christian v. TransPerfect Global, Inc.*,
  Case No. 17-cv-5554, 2018 WL 4571674 (S.D.N.Y. Sep. 24, 2018) ..................................... 12

*Cresci v. Mohawk Valley Cmty. College*,
  693 F.App'x 21 (2d Cir. 2017) ............................................................................................... 10

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017)..................................................................................................... 10

*In re Alaimo*,
  288 A.D.2d 916 (4th Dep't 2001) ............................................................................................ 2

*In re CIL Limited*,
  Case No. 13–11272, 2018 WL 3031094 (S.D.N.Y. Bankr. June 15, 2018) ............................. 9

*In re Friends for Long Island's Heritage*,
  80 A.D.3d 223 (2nd Dep't 2010) ............................................................................................. 6

*In re General Motors LLC Ignition Switch Lit.*,
  Case No. 14-MD-2543, 2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017) .................................... 9

*In re Trustco Bank*,
  33 Misc.3d 745 (Sur. Ct. Schenectady Co. 2011) ................................................................ 4-5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................................ 9-10

*Matter of Multiple Sclerosis Serv. Org. of N.Y., Inc.*,
  68 N.Y.2d 32 (1986) ................................................................................................................ 6

*Pasternack v. Shrader*,
　863 F.3d 162 (2d Cir. 2017) .................................................................................................. 9

*Sagtikos Manor Historical Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.*,
　127 A.D.3d 1056 (2d Dep't 2015) ........................................................................................ 3

*Williams v. Citigroup, Inc.*,
　659 F.3d 208 (2d Cir. 2011) .................................................................................................. 8

## RULES AND STATUTES

Fed. R. Civ. P. 12(b)(1) ............................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1, 12

N.Y. Not-for-Profit Corp. Law § 513 (2014) ..............................................................................6, 7

### I. BOTH THE COMPLAINT AND PFAC ADEQUATELY ALLEGE STANDING

**A. The Court Did Not Accept The Disputed Factual Allegations Of The Complaint**

Hadassah argues that HAC's motions should be denied because HAC has not added any new facts, nor has it identified errors of law or fact made by the Court.[1] Therefore, Hadassah contends, reconsideration is not warranted and amendment is futile.

At the very outset of its Opposition Memo (ECF #56) ("Opp."), Hadassah states: "[t]his was a motion to dismiss wherein the Court accepted as true all of the allegations of the Complaint . . ." Opp. at 1. Hadassah repeats this assertion throughout its opposition. *See, e.g.,* Opp. at 4 ("The allegations of the Complaint … which the Court already accepted as true."); Opp. at 13 ("That allegation was in the Complaint and accepted as true by the Court.").

However, the Court did not grant, or even consider Hadassah's 12(b)(6) motion. Opinion at 6-7. Instead, the Court granted Hadassah's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Hadassah's opposition fails to address Rule 12(b)(1) at all. Thus, Hadassah's opposition is premised on the incorrect assertion that the Court accepted as true HAC's contention that specific gifts were made to Hadassah that were earmarked by the donors for the exclusive benefit of HAC and that Hadassah was bound by the donor's wishes.

Specifically, the Court held that HAC lacked standing to bring the claim that Hadassah had wrongfully withheld donor money which was exclusively for the benefit of HAC. With regard to those factual allegations of HAC's complaint, here is what the Court actually held:

> To survive a Rule 12(b)(1) motion to dismiss, the party asserting jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. On such a motion the district court must take all uncontroverted facts of the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction. However, **where jurisdictional facts are placed in**

---

[1] Unless otherwise noted, the abbreviations used herein are the same as those employed in HAC's Moving Memorandum, dated November 15, 2018 (ECF# 50) ("Mov.").

1

**dispute, the court has the power to and obligation to decide issues of fact by reference to evidence outside the pleadings**, such as affidavits. Opinion at 2. (Internal citations, quotation and punctuation marks omitted; emphasis supplied)

The Court did not accept HAC's factual contentions as true. The Court held that HAC had not proven the existence of a special interest in certain specified funds in the hands of Hadassah. Thus, the error of fact committed by the Court was the failure to recognize that the preponderance of the evidence supports HAC's assertion that it has a special interest in certain funds that were earmarked by the donors, and accepted by Hadassah, for the exclusive benefit of HAC. However, even if the Complaint failed to plead a special interest, the allegations of the PFAC more than suffice.

### B. Hadassah Misstates The Law Of Standing For Beneficiaries Of Charitable Gifts

Hadassah's argument about HAC's standing boils down to one incorrect proposition of law: A beneficiary has a special interest in a charity's funds and thus standing, if, and only if, the beneficiary can be identified in the charity's governing documents. Opp. at 5-8.

Hadassah begins by citing *In re Alaimo*, 288 A.D.2d 916 (4th Dep't 2001), a case which held that a person in whose honor a trust was created does not have standing. It is inapposite.

Hadassah next argues that under *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458 (1985), standing exists only for those entities who are named or described as a beneficiary in the charity's governing documents (*e.g.*, its Constitution, Articles of Incorporation, etc.). Opp. at 6.[2]

This is not what *Alco Gravure* holds. In *Alco Gravure*, the court recognized that standing exists "when a particular group of people has a special interest in funds held for a charitable

---

[2] Hadassah says that it was not "organized to support HAC" because it was established 80 years before HAC even existed. Opp. at 6 (n. 2). It does not matter who came first. The mission of a charity can change over time. Hadassah's Constitution lists four "objects and purposes" which pertain to "the State of Israel." Art. III. Ex. 5 to Eric R. Levine's Reply Dec. Israel was founded in 1948, 36 years after Hadassah's creation. Thus, HAC can have a special interest in funds in the hands of Hadassah even though Hadassah was formed before HAC was created.

2

purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number." 64 N.Y.2d at 465 (citations omitted). *Alco Gravure* holds that a special interest exists when three factors are satisfied: (1) a particular group of people must have a preference in the distribution of identifiable funds, (2) the class of said beneficiaries is sharply defined and (3) the class is limited in number. *Id.* at 465. *Alco Gravure* says nothing about a charity's governing documents. It does not say, but easily could have said, that the only parties with standing are those who are explicitly named or sharply defined and limited in the charity's governing documents. Indeed, why would the court have discussed the requirement of a preference in the receipt of funds if what it really meant was a proper plaintiff has to be someone named or described in the governing documents? *Alco Gravure* discusses **what** a plaintiff needs to show; not **how** a plaintiff must show it.

The law on how a plaintiff proves that it has a preference to the charitable funds in question and that it belongs to a sharply-defined and numerically-limited class of beneficiaries (*i.e.*, has standing) is discussed in *Sagtikos Manor Historical Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.,* 127 A.D.3d 1056, 1057 (2d Dep't 2015).

In *Sagtikos Manor*, the court held that a special interest can be found in two ways. *First*, it can be "found by looking to the trust's chartering documents to discern the purpose of the trust, and whether there is a class of intended beneficiaries that is entitled to a preference and is sharply defined and limited in number." *Id.* at 1057 (citations omitted). *Second*, it can be found by looking at the documents which effectuate the gift in question. The court stated:

> Gardiner died in 2004, and his **will** directed that his residuary estate be held in trust for the benefit of his widow, Eunice Gardiner, during her life, with the principal to be distributed to the Foundation upon her death. Eunice Gardiner died in 2011. . . The Historical Society contacted the Foundation requesting an accounting of the charitable remainder of Gardiner's estate. By letter dated December 12, 2011, counsel for the Foundation rejected the Historical Society's

3

> request on the ground that it was not named as a beneficiary under Gardiner's **will nor any trust created thereunder**. *Id*. at 1057 (emphasis supplied)
>
> * * *
>
> [The Foundation's Certificate of Incorporation, as amended] does not name the Historical Society as a beneficiary, nor does it name any beneficiary.  Gardiner's **will** did not mention the Historical Society.  Accordingly, the Historical Society was not part of a class of potential beneficiaries of the Foundation that is sharply defined and limited in number. Therefore, it lacked standing to commence this action.  *Id*. at 1058 (emphasis supplied)

Because neither the Foundation's governing documents **nor** Gardiner's will named the plaintiff Historical Society as a beneficiary, the *Sagtikos* Court held that "[a]ccordingly, the Historical Society was not part of a class of potential beneficiaries of the Foundation that is sharply defined and limited in number.  Therefore, it lacked standing to commence this action [for an accounting]." *Sagtikos Manor*, 127 A.D.3d at 1057-58.

The teaching of *Sagtikos Manor* is that a special interest can be found in the governing documents of the charity **or** in the gift document.  Hadassah disputes this but offers no explanation for why the court repeatedly discussed Gardner's will if it supposedly did not matter. Opp. at 7.  Hadassah says the time-line makes no sense because the Foundation was created in 1987 but Gardner and his wife did not die until years later.  Hadassah says that the "lawsuit was for a judgment declaring the intent of the Grantor in creating the Foundation."  Opp. at 7 (n. 3). So, how could a will which might post-date the creation of the Foundation provide guidance into the Grantor's intent?  The answer is that a special interest (*i.e.*, the Grantor's intent that an entity receive preferential treatment) might be created by the Grantor's will.

The Surrogate's Court's decision, *In re Trustco Bank*, 33 Misc.3d 745 (Sur. Ct. Schenectady Co. 2011), further supports this conclusion.  In *In re Trustco*, a trustee commenced a *cy pres* proceeding regarding the payment of "trust remainder interests."  A hospital had relinquished its license, throwing into doubt the ability of a foundation to continue its charitable

4

mission of supporting the hospital.  A party named Ellis sought to intervene, but was challenged by the foundation, a designated beneficiary of the trust, arguing that "Ellis is merely a potential beneficiary, and the courts in New York have held that a potential beneficiary does not have standing to enforce or challenge the disposition of charitable gifts, citing *Alco Gravure* . . ."  *Id.* at 748.  The court held that Ellis had standing not because it was a named beneficiary in the charity's governing documents but because it had special contractual relationships with the hospital and the foundation.  *Id*. at 753.  Therefore, Ellis is "entitled to a preference in the distribution of the subject charitable disposition.  Ellis is a sharply defined potential beneficiary, and thus falls under the exception . . . under *Alco Gravure*, giving Ellis standing . . ."  *Id*.

Hadassah warns that if this Court were to follow the teachings of the above cases, it would open the "floodgates" of litigation.  Opp. at 7.  However, *Alco Gravure* was concerned with "prevent[ing] **vexatious litigation** and suits by **irresponsible parties** who do not have a **tangible stake** in the matter and have not conducted appropriate investigations."  64 N.Y.2d 458, 466 (citation omitted) (emphasis added).  HAC has: (i) a responsibility to prevent the diversion of funds intended for it, (ii) a tangible stake in said funds, and (iii) conducted an investigation.

### C.  The Gift Agreements And Gift Protocol Do Not Limit HAC's Special Interest

Hadassah argues that the Gift Agreements and the Gift Protocol establish, as a matter of law, that Hadassah has sole and absolute discretion as to how all moneys dedicated to HAC are expended.  Hadassah says HAC has no special interest in the funds, and Hadassah can spend money earmarked by a donor exclusively for HAC on any other cause Hadassah chooses.  "As the Order noted, the Gift Protocol, which governs the parties' relationship, provides that Hadassah maintains *complete control and discretion* over funds donated to Hadassah and has no obligation to forward them to HAC."  Opp. at 6 (n. 2) (emphasis in original).

Hadassah's assertion that it can use the moneys earmarked by donors for HAC for any charitable purpose it chooses is false. Section 513(a) of the Not-For-Profit Corporation Law provides that a charitable corporation "shall hold full ownership rights in any assets" given, granted, bequeathed or devised to the corporation. Subsection (b) provides that "the governing board shall apply all assets thus received to the purposes specified in the gift instrument."

The purpose of the law is to vest ownership of the property in the charity free from the restrictions placed on trusts but also to ensure the charity complies with the donor's wishes. *In re Friends for Long Island's Heritage*, 80 A.D.3d 223 (2nd Dep't 2010). The court stated:

> Pursuant to N–PCL 513(a), a not-for-profit corporation (hereinafter an NFP) has 'full ownership rights' in all assets given or bequeathed for a specified purpose; such assets not held by an NFP in trust. Nevertheless, the rights of the NFP are not without restriction. Pursuant to N–PCL 513(b), the 'governing board' of the NFP '**shall apply all assets thus received to the purposes specified in the gift instrument and to the payment of the reasonable and proper expenses of administration of such assets.**' Assets held for a specific purpose by a 'Type B' NFP, such as Friends, must be used for that purpose and the 'reasonable and proper expenses of administration of such assets' (N–PCL 513[b]). Further, accounts relating to those assets must be kept 'separate and apart from the accounts of other assets of the corporation' (N–PCL 513 [b] ). [Note, a Type B NFP corporation is one formed for charitable, educational, religious or cultural, etc. purposes. N-PCL 201.]

80 A.D.3d at 230 (citation omitted, emphasis added). In *Matter of Multiple Sclerosis Serv. Org. of N.Y., Inc.*, 68 N.Y.2d 32, 40 (n. 5) (1986), the Court of Appeals stated:

> [a]ssets legally required to be used for a particular purpose are those received pursuant to a will or other instrument limiting the purpose for which the assets may be used. N–PCL § 513 provides that although a type B corporation holds full ownership rights in property received in trust for, or with direction to apply the same to, a purpose specified in its certificate of incorporation, it "shall not be deemed a trustee of an express trust of such assets" (§ 513[a] ) **but is required to "apply all assets thus received to the purposes specified in the gift instrument"** (§ 513[b] ) except as permitted by EPTL article 8 or N–PCL § 522. (emphasis added)

6

The Gift Agreements and Gift Protocol do not limit HAC's special interest in funds earmarked by donors for HAC. The documents merely confirm that, as provided in § 513(a), the donated funds are the property of Hadassah subject to the requirements of § 513(b). To the extent that Hadassah is arguing that it has exempted itself from the requirements of § 513(b) by inserting language contrary to the statute into the documents, said provisions are simply illegal. *See, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2d Cir. 2006) (a contract contrary to public policy as stated in a statute is unenforceable). [REDACTED] (Exhibits B-D & G to the PFAC), [REDACTED]

Hadassah's own governing documents (which Hadassah asserts are the only source for the creation of a special interest) further confirm that Hadassah is bound to respect the wishes of the donors: The Finance provision of Hadassah's Constitution provides:

> All funds, contributions and gifts collected by Hadassah . . . for the purposes, objects and programs of the organization . . . shall be allocated for the purposes, objects and programs of the organization in accordance with duly approved budgets, and the purposes within the program of the organization, **which may be specified by the donor(s)**. Art. XVII, § 2, Rev. 7/2004, attached as Exhibit 5 to the Levine Reply Dec. (emphasis added).

In sum, the [REDACTED] The N-PCL and Hadassah's Constitution require implementation of the donor's directives. [REDACTED] This obligation to give the money to HAC, and only HAC, means that HAC has a preference to the charitable funds in question and that HAC belongs to a sharply-defined and numerically-limited class of beneficiaries (*i.e.*, a class of one). HAC has standing under *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458 (1985) and its progeny.

## II. HAC SHOULD BE GRANTED LEAVE TO AMEND

### A. The Standard To Be Applied On A Motion To Amend

As discussed in the Moving Mem., a "motion to amend is generally denied only for futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Mov. at 13.

In its lead point in opposition to HAC's motion to amend, Hadassah states that the above standard "is not, in fact, the standard that applies to motions requesting amendment of a complaint following the entry of judgment." Opp. at 9. Hadassah cites *Becnel v. Deutsche Bank AG*, 838 F.Supp.2d 168 (S.D.N.Y. 2011), as controlling authority for its contention that a different standard applies and includes the following two sentence block quote from the case:

> [A] party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to [Rule 59(e) or 60(b) ]." This is so because Rule 15's liberal amendment policy [should not] be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation. *Id.* (citations and quotations omitted).

Hadassah, however, leaves out the very next two sentences of *Becnel*:

> Nonetheless, the liberal spirit of Rule 15 does not necessarily dissolve as soon as final judgment is entered. Accordingly, **the Second Circuit holds that it is reversible error for a court to address only concerns of finality without also taking into account the nature of the proposed amendment, in light of the strong preference for resolving disputes on the merits.**

*Id.* (citations and quotation marks omitted) (emphasis added).

Indeed, in *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011), the case relied upon by *Becnel* (and also included in Hadassah's Opp.), the Second Circuit concluded that the district court abused its discretion and vacated the district court's order denying a post-judgment motion for leave to replead. The Second Circuit could not have been more clear: "The [Supreme Court's] *Foman* holding cannot be reconciled with the proposition that the liberal spirit of Rule

8

15 necessarily dissolves as soon as final judgment is entered." *Id.*

In light of this clear authority, it is apparent why Hadassah never identifies the different standard that supposedly applies here or the purportedly different factors a court should look to in the post-judgment context. There is no different standard, and the factors that apply are the exact ones identified by HAC in the Moving Mem. and above.[3]

### B. The Only Issue In Dispute Is Whether The Proposed Amendment Is Futile

Futility is the only issue actually in dispute here. In fact, other than futility, the only one of the factors Hadassah directly addresses at all is prejudice.

Hadassah argues that it will be prejudiced because it will be forced to expend additional funds defending against HAC's claims if the amendment is allowed. Opp. at 17. However, it is well-settled that "expending 'time, effort and money' to litigate a matter, without more, does not constitute prejudice." *In re General Motors LLC Ignition Switch Lit.*, 2017 WL 5504531, at *2 (S.D.N.Y. Nov. 15, 2017) (quoting *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017)).

Hadassah also half-heartedly challenges the timing of HAC's motion. It does not directly

---

[3] This Court's decision in *Audio Emotion S/A v. McIntosh Group, Inc.*, Case No. 15-cv-5735, 2017 WL 6492506 (S.D.N.Y. Jan. 11, 2017), does not change this analysis. In *Audio Emotion*, the "Plaintiff cited no new law, nor ma[de] any suggestion that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion." 2017 WL 6492506, at *3 (internal citations and quotations omitted). Moreover, the Court expressly based its decision to deny leave to amend on the fact that "any subsequent amendment to the complaint based on this new evidence presented would be futile." *Id.* And, the proposition that "a court may exercise its discretion more exactingly" in the post-judgment context, 2017 WL 6492506, at *1 (citation and quotation omitted), is highly questionable because of the Second Circuit's recent decisions discussed here and in the section that follows. In light of this precedent, courts have questioned the continuing relevance of the nearly thirty-year old case cited in *Audio Emotion* to support the idea that "a court may exercise its discretion more exactingly" in the post-judgment context. *See, e.g.*, *In re CIL Limited*, Case No. 13–11272, 2018 WL 3031094, at *8 (S.D.N.Y. Bankr. June 15, 2018). *CIL* expressly rejects the exact argument Hadassah is making here because cases like *Loreley* "completely undercut[] that argument." *Id.* Finally, even under a "more exacting" exercise of discretion, HAC is entitled to replead.

9

state that HAC has unduly delayed in filing the motion to amend – it knows it cannot make such an argument in light of the slew of Second Circuit cases which confirm that "[t]he proper time for a plaintiff to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning **from the court** what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously." *Cresci v. Mohawk Valley Cmty. College,* 693 F.App'x 21, 25 (2d Cir. 2017) (emphasis added); *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *F5 Capital v. Pappas*, 856 F.3d 61, 89-90 (2d Cir. 2017). Instead, Hadassah argues that *Cresci*, *Loreley*, and *F5 Capital* "are inapposite" because they involved a plaintiff requesting leave to amend in its opposition to a motion to dismiss. Opp. at 16. This is a distinction without a difference. Indeed, *Cresci* itself makes that perfectly clear: "upon moving to amend *at the appropriate time*—that is, after being advised by the court of the complaint's defects . . ." *Cresci,* 693 F.App'x at 25, n. 2 (emphasis in original). Plainly, HAC moved for leave to amend "*at the appropriate time.*"

Hadassah does not even contend that any of the remaining factors – bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed – are present.

### C. The Proposed Amendment Is Not Futile

The cases upon which <u>both</u> HAC and Hadassah rely make it abundantly clear that HAC should be granted leave to replead if amendment is not futile.

#### 1. Amendment Is Not Futile Under Fed. R. Civ. P. 12(b)(1)

As discussed above and in the Moving Mem., HAC is the **only** entity entitled to the funds at issue and, as such, it has a special interest and standing. The PFAC contains multiple allegations that establish HAC's special interest. For example, the PFAC alleges:

- ███████████████████████████████████████████████████████, PFAC ¶ 10;

10



- Hadassah's financial statements identify millions of dollars in restricted funds to be used exclusively for HAC, PFAC ¶¶ 120-132;

- ███████████████████████████████████████████ ███████████, PFAC ¶¶ 5-8 & 54-67;

- ███████████████████████████████████████████ ███████████████████████████████████████████ PFAC ¶¶ 68-72;

- ███████████████████████████████████████████ ███████████ PFAC ¶¶ 75-77; and

- ███████████████████████████████████████████ ███████████████████████████████████████████, PFAC ¶¶ 55-62;

Hadassah does not – and cannot – dispute any of the above allegations. The best it comes up with is to argue that the handwritten notations of its own General Counsel, which expressly state: ███████████████████████████████████████████ (capitalization in original) are somehow evidence of "*Hadassah using its discretion* . . ." Opp. at 13 (emphasis in original). This assertion is belied by Hadassah's contention elsewhere that these same comments constitute legal advice in anticipation of litigation. These notes were not made by some Hadassah executive deciding how to allocate funds. They are the analysis of its General Counsel, supposedly made in anticipation of litigation. ███████████████████████ ███████████████████████████████████████████ ███████████████████.

Similarly, Hadassah asserts that the spreadsheets █████████████████ ███████████████████ were prepared in anticipation of litigation and in consultation with counsel. These spreadsheets are not "Hadassah using its discretion" to allocate funds, █████ ███████████████████████████████████████████.

### 2. Amendment Is Not Futile Under Fed. R. Civ. P. 12(b)(6)

Hadassah does not seriously address futility under 12(b)(6) at all. Rather, it relegates its discussion of five of the six causes of action alleged in the PFAC to a footnote referring back to the memoranda of law it filed in support of its motion to dismiss the Complaint. Opp. at 15.

Hadassah's reticence to engage on this issue is understandable. After all, as discussed in the Moving Mem. – and entirely ignored by Hadassah in its Opp. – the primary argument relied upon by Hadassah on its motion to dismiss under 12(b)(6) was premised on the contention that it was not obligated to convey to HAC the funds which were expressly donated for HAC. Mov. at 20. . Regardless, amendment is not futile.[4]

### III. HADASSAH'S CLAW BACK ATTEMPT SHOULD BE REJECTED

Hadassah describes the parties' privilege dispute as a "fabricated skirmish," Opp. at 2, and an "irrelevant sideshow." Opp. at 18. It is neither. The "skirmish" comes about because

---

[4] The one cause of action that Hadassah does address is the promissory estoppel claim. Opp. at 15. Hadassah's assertion that "HAC does not refer to a single 'clear and unambiguous promise' that Hadassah made to HAC," Opp. at 15, is preposterous. The PFAC expressly alleges: (i) promises Hadassah made to HAC directly, *see, e.g.,* PFAC ¶ 16 ("Hadassah's President directly committed to HAC" that it would transfer to HAC all funds that it receives for HAC); and (ii) promises Hadassah made to HAC's donors. *See, e.g.,* PFAC ¶ 47 (e-mail from Hadassah's National VP stating that she "assured" a donor that "her money would continue to go to [HAC]."). And, as discussed above, the Gift Protocol is an unenforceable contract and HAC can plead promissory estoppel as an alternative cause of action. Finally, "[t]here is an open question of whether an unconscionable injury is a required element of a promissory estoppel claim where the claim is not invoked to estop the application of the Statute of Frauds" and, in any event, that issue "is not appropriate for determination on a motion to dismiss." *Christian v. TransPerfect Global, Inc.,* 2018 WL 4571674, at *8 (S.D.N.Y. Sep. 24, 2018).

**Hadassah** is making an application to claw back documents which it only claimed were privileged after being informed that HAC was considering using them on this motion.

More importantly, the documents are highly relevant to issues that go to the core of the case. As discussed above, the documents Hadassah is seeking to claw back include ███████ ███████████████████████████████████████████████████████. A number of these documents are attached as Exhibits to the PFAC and support both: (i) ███████ ████████████████████████████████████████████████████████████ █████████████████████████████. Hadassah is well-aware of the significance of these documents. Indeed, although Hadassah says the question of the privilege of these documents is an "irrelevant sideshow," in the very next sentence of its brief it refers to the seventeen pages of documents that are attached to the PFAC. And, Hadassah then devotes the next eleven pages to the issue in an attempt to prevent these documents from being considered on this motion.

Due to space constraints, and because the parties have already addressed this dispute at length in other submissions, HAC will only briefly address the privilege dispute here.[5]

Hadassah takes issue with "HAC's vitriolic tirade about Hadassah's purported carelessness . . ." Opp. at 2. Hadassah's discomfort with discussing the profound carelessness of its document production is understandable. However, a party's carelessness is one of the key factors to consider in determining whether a waiver has occurred. And, in its opposition, Hadassah provides further evidence of its carelessness. Hadassah acknowledges that "Ms. Zeligson and Mr. Kurtz obviously knew at the time that they reduced their consultations to writing that those writings were privileged . . ." Opp. at 24. However, in an attempt to defend their complete lack of involvement in the document production process, Hadassah states:

---

[5] HAC respectfully refers the Court to its Mov. Mem. and its letter of November 28th (ECF #55).

13

> . . . neither Ms. Zeligson nor Mr. Kurtz were physically reviewing documents and **could have no idea what particular documents** were included in the million-plus documents **spanning thirteen years** that the team was reviewing. That **ocean of documents** was split among the team members. The notion that Ms. Zeligson or Mr. Kurtz could tell the team members to 'be on the lookout for' particular, **obscure documents** on which their non-obvious writing might appear is just absurd. *Id.* (emphasis added).

Hadassah tries to give the impression that the documents that are the subject of this dispute are "obscure documents" from years ago. They are not. For example, some (if not all) of the spreadsheets which Ms. Zeligson claims were "created during and pursuant to conversations between Hadassah's outside counsel . . ., myself, and other individuals who work at Hadassah," Zeligson Dec. (ECF #52-2) ¶ 20, are from **last year**. *See, e.g.,* Document Bates Stamped H00042728 (page 150 of 218) of Exhibit 2 to the Levine Dec. According to Ms. Zeligson, the spreadsheets contain "legal advice to Hadassah in anticipation of litigation." Zeligson Dec. ¶ 20. These are not obscure privileged communications from years ago that slipped by Hadassah's "Review Team." They are documents which Hadassah's two most senior lawyers supposedly helped create just **last year in anticipation of this very litigation**. And, Hadassah concedes that those two lawyers "obviously knew" these documents were privileged yet did nothing to prevent their disclosure.[6]

Hadassah's argument with respect to the scope of its "inadvertent production" also fails. According to Hadassah, the "inadvertently produced" documents constitute a small percentage of the total amount of documents produced. Opp. at 22-23. However, Hadassah also admits that it

---

[6] Additionally, Hadassah still cannot provide an explanation for how it is reasonable to conduct a document review without knowing the names of sixty of its lawyers. That "Hadassah is a large organization[,]" has "a lot of turnover[,]" and uses "outside counsel at multiple law firms[,]" simply does not cut it. Opp. at 24. Entities much larger than Hadassah are able to generate lists of their attorneys and conduct appropriate privilege reviews. If Hadassah cared about protecting the purportedly privileged documents, it could have done the same.

never reviewed its production to determine how many other documents – documents not identified by HAC for use in these motions – were "inadvertently produced." Opp. at 25-26. On its own, this is a stunning admission of carelessness. *See* Mov. at 28-29. Moreover, it renders Hadassah's math worthless. Hadassah cannot say what percentage of its production is made up of "inadvertently produced" material because, in the thirty days since Hadassah learned of the problems with its production, it never went back to check. Thus, there is no way to know the scope of Hadassah's "inadvertent production."[7] What is certain is that Hadassah is trying to claw back a staggering 71% of the pages HAC identified for potential use on these motions.

Finally, after successfully misleading this Court into dismissing a valid complaint, Hadassah has the temerity to argue that "'[o]verarching issues of fairness' militate in favor of protecting privilege," Opp. at 28, so that Hadassah can ███████████████████████████ ███████████████████████████.

## CONCLUSION

For the reasons stated above and in the Moving Mem., HAC's motions should be granted in all respects and the Court should reject Hadassah's claw back request.

Dated: December 6, 2018

                                                    EISEMAN LEVINE LEHRHAUPT
                                                  & KAKOYIANNIS, P.C.

                                                  By:_____/s/ Eric R. Levine_____
                                                         Eric R. Levine
                                                         (elevine@eisemanlevine.com)
                                                   805 Third Avenue
                                                   New York, New York 10022
                                                   212-752-1000
                                                   *Attorneys for Plaintiffs*

---

[7] In fact, Hadassah acknowledges in a footnote that there are indeed additional documents it wants to claw back. Opp. at 26 (n. 15) ("we would have identified and clawed back any other documents containing privileged information, including the documents HAC identified in . . . its November 28th letter, as containing identical information to the documents at issue here.").