USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HADASSAH ACADEMIC COLLEGE,

Plaintiff,

-against-

HADASSAH, THE WOMEN'S ZIONIST
ORGANIZATION OF AMERICA, INC.,

Defendant.

18 Civ. 2446 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On March 19, 2018, Plaintiff, Hadassah Academic College ("HAC"), sued Defendant, Hadassah, the Women's Zionist Organization of America, Inc. ("Hadassah"), for breach of fiduciary duty, an accounting, conversion, unjust enrichment, and imposition of a constructive trust. Compl., ECF No. 1. By order dated November 1, 2018, the Court granted Hadassah's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing (the "Order"). ECF No. 44. HAC moves for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 and for leave to file an amended complaint pursuant to Federal Rules of Civil Procedure 15(a) and 16(b). ECF No. 46. For the reasons stated below, HAC's motion is DENIED.

## BACKGROUND

HAC is a college in Jerusalem, Israel, serving approximately 4,000 students. Compl. ¶ 1. Hadassah is a New York, not-for-profit corporation committed to "women's health and well-being, to Israel, and to Jewish values and continuity." *Id.* ¶¶ 2, 20. Over the past five decades, Hadassah has raised tens of millions of dollars for HAC and its predecessor, the Hadassah College of Technology. *Id.* ¶ 3. Hadassah has donated funds directly to HAC, and has also "served as a conduit for North American donors to make donations" to HAC through Hadassah.

*Id.* ¶ 4.  The relationship between HAC and Hadassah has deteriorated in recent years largely due to a dispute over the use and ownership of the real property comprising the HAC campus.  *Id.* ¶ 8.  HAC alleges that Hadassah has failed to forward funds donated to it for HAC's benefit "in an attempt to gain leverage and exert pressure" with respect to the campus dispute.  *Id.* ¶ 11. HAC also alleges that Hadassah has withheld funds and information related to bequests and annuities.  *Id.* ¶ 14.

## DISCUSSION

I.     Motion for Reconsideration

A.  Legal Standard

HAC brings the present motion for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3.  Local Rule 6.3 provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  Thus, "to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."  *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001).  Local Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."  *Id.*

"Rule 59(e) may be used by a party seeking to alter or amend a judgment, while Rule 60(b) provides relief from a final order."  *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17 Civ. 1266, 2019 WL 181308, at *2 (S.D.N.Y. Jan. 11, 2019).  Under either rule, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] court may grant reconsideration where the party moving for reconsideration demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014). (internal quotation marks and citation omitted).

A motion for reconsideration is "not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion." *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). To that end, a party may not use a motion for reconsideration to "advance new facts, issues or arguments not previously presented to the court." *McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Instead, motions for reconsideration are narrowly construed in order "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). The burden rests with the party seeking reconsideration to "demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Davis v. Gap, Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y. 1999).

B. Analysis

The Court granted Hadassah's motion to dismiss on the ground that HAC lacked standing under New York law, which provides that, except for a narrow exception not applicable here, only the Attorney General has standing to enforce the terms of charitable bequests. *See* Order at

3–6.  As discussed in the Order, New York's Estates, Powers and Trusts Law ("EPTL") § 8-1.1(f) provides that: "The attorney general shall represent the beneficiaries of such dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such beneficiaries by appropriate proceedings in the courts."  This provision codifies New York's long standing rule that "[n]ormally, standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General."  *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 466 (1985).  The purpose of this rule is to "prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter and have not conducted appropriate investigations."  *Id.*  The Attorney General has the power and duty to represent beneficiaries of charitable organizations and the "general rule is that one who is merely a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust."  *Id.* at 465.

There is a narrow exception to the general rule, however, "when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number."  *Id.*; *see also Sagtikos Manor Historical Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.*, 9 N.Y.S.3d 80, 82 (2d Dep't 2015) ("A party with a special interest in the enforcement of the trust may have standing to commence such an action.").  In the Order, the Court concluded that HAC lacked standing to sue Hadassah for its alleged failure to pay to HAC funds that were gifted to Hadassah because it failed to articulate a special interest in Hadassah's funds.  Order at 4–5.

HAC moves for reconsideration on two grounds: "(1) the Court committed errors of law and fact when analyzing HAC's standing, and (2) newly discovered evidence further

demonstrates that HAC has standing to pursue [its] claims." Pl. Mem. at 4, ECF No. 50. With respect to its second argument, HAC cites new evidence it obtained in discovery. In particular, HAC attaches seven documents as exhibits, filed under seal, to its proposed first amended complaint (the "PFAC"). PFAC, Levine Decl. Ex. 1, ECF No. 51-1. HAC also filed an affidavit in support of its motion for reconsideration—the Declaration of Eric R. Levine ("Levine Declaration")—which attaches 217 pages of "documents produced by Hadassah which it wants to claw back" as Exhibit 2. Levine Decl. ¶ 4, ECF No. 51. HAC states that this "newly discovered evidence is Hadassah's internal records which show it acknowledged that certain funds were earmarked for HAC by donors and could only be remitted to HAC." Pl. Mem. at 7. In opposition, Hadassah contends that nothing in the exhibits to the PFAC confers standing on HAC and that the 217 pages of documents in Exhibit 2 should be ignored because HAC does not cite any of these pages in support of its motion (except for those which constitute four of the exhibits attached to the PFAC). Def. Opp. at 2, ECF No. 56. HAC argues that the Court should consider these documents because "the arguments in support of the motion for reconsideration significantly overlap with arguments made in connection with the motion to replead and the issues raised by [Hadassah's] efforts to claw back certain documents." Levine Decl. ¶ 3. At the outset, the Court notes that this affidavit was filed in violation of Local Civil Rule 6.3, which states that for motions for reconsideration, "[n]o affidavits shall be filed by any party unless directed by the Court." Nevertheless, the Court has considered such evidence and finds that it does not change its conclusion that HAC has no standing to sue, as explained below.

With respect to HAC's first argument in support of its motion for reconsideration, it argues that the Court "made several significant errors of law and fact" and that its "misunderstanding of the facts led the Court to make errors of law regarding HAC's legal

standing to assert claims against Hadassah." Pl. Mem. at 7–9. HAC, however, identifies no material fact or principle of law that was overlooked by this Court in dismissing the complaint for lack of standing. HAC notes that the controlling law is set forth in *Alco Gravure* and *Sagtikos Manor*, which "discussed how a court determines the existence of a 'special interest.'" *Id.* at 9–10. Indeed, this Court considered and applied these very cases that HAC contends the Court overlooked. *See* Order at 3–7. HAC's contentions demonstrate that it simply disagrees with the Court's application of this authority, not that the Court overlooked it. HAC's reargument does not establish any "change of controlling law," "clear error" or "manifest injustice" that would constitute grounds for reconsideration.

For example, HAC argues that the Court erred "by considering only the chartering documents of Hadassah" and that it "should have considered the wills or other instruments (e.g., a gift agreement between a donor and Hadassah) in which the donor specified and Hadassah agreed that HAC would be the sole beneficiary of the donor's gift." Pl. Mem. at 11. In the alternative, HAC contends that the Court erred because it should have considered the "wills, deeds and other gift instruments or agreements," and not the charter of Hadassah, to be the "foundational documents at issue here." *Id.* HAC, however, cites no support for this proposition—let alone controlling law. Moreover, HAC's argument rests on a misreading of the caselaw, which holds that a special interest "is found by looking to the trust's chartering documents to discern the purpose of the trust, and whether there is a class of intended beneficiaries that is entitled to a preference and is sharply defined and limited in number." *Sagtikos Manor*, 9 N.Y.S.3d at 82. The Court, therefore, did not make an error of law in holding that HAC does not possess a special interest in Hadassah's funds, because HAC does not—and

cannot—allege that Hadassah was created for the benefit of HAC or that Hadassah's governing documents reflect this.

In an effort to circumvent this narrow exception, however, HAC incorrectly cites *Sagtikos Manor*. In that case, the grantor, Robert David Lion Gardiner, established the foundation that was the defendant. *Sagtikos Manor*, 9 N.Y.S.3d at 82. He died in 2004 and his will directed that his residuary estate be held in trust for his wife, and that upon her death, it would go to the foundation. *Id.* The plaintiff, a historical society and past beneficiary of the foundation, then contacted the foundation requesting an accounting of the charitable remainder of Gardiner's estate. *Id.* When its request was rejected, the plaintiff sued the foundation for a judgment declaring the intent of the grantor of the foundation with respect to the foundation's charitable purposes and beneficiaries. *Id.* The court held that the plaintiff did not have standing, because the foundation's certificate of incorporation did not name the plaintiff as a beneficiary. *Id.* at 82–83. The court also stated in passing that "Gardiner's will did not mention" the plaintiff. *Id.* at 82. HAC makes much of this dicta sentence, arguing that it "held that the original donor's intent as manifested in that donor's will can create a special interest in the funds even if the funds pass through a foundation that has no designation." Pl. Mem. at 10. *Sagtikos Manor*, however, held no such thing. First, the court held that the plaintiff did *not* have standing. Moreover, to the extent that Gardiner's will was relevant as a "chartering document" of the foundation, it was because he had established the foundation.

*Sagtikos Manor*, therefore, did not hold that a special interest "can be found by looking at the documents which effectuate the gift in question," as HAC argues. Pl. Reply at 3, ECF No. 62. Rather, it held that a special interest "is found by looking to the trust's chartering documents to discern the purpose of the trust, and whether there is a class of intended beneficiaries that is

entitled to a preference and is sharply defined and limited in number." *Sagtikos Manor*, 9

N.Y.S.3d at 82.  Here, by contrast, it would be improper to consider the donor's will that HAC

attaches to the PFAC as foundational because the donor is not alleged to be a founder of

Hadassah.  *See* PFAC Ex. D.  Nor would it be proper to consider the gift agreements between

donors and Hadassah, *id.* Exs. B–C, to be "chartering documents" because they do not "discern

the purpose" of Hadassah and cannot show whether HAC is in a "class of intended beneficiaries"

of Hadassah's funds, *Sagtikos Manor*, 9 N.Y.S.3d at 82.  Additionally, none of the other

documents attached to the PFAC or as Exhibit 2 to the Levine Declaration are chartering

documents which confirm HAC's claim of a special interest.  Therefore, HAC's purported new

evidence does not change the Court's conclusion that HAC lacks standing under New York law.[1]

Furthermore, such a construction would gut EPTL § 8-1.1(f) and run contrary to *Alco

Gravure*—which HAC concedes is controlling here—by opening up the litigation floodgates to

allow any entity named in a gift instrument to sue the charity over its exercise of its discretion in

making distributions.  As Hadassah notes, "there is a multitude of such gifts naming various

entities every year."  Def. Opp. at 7.  Allowing HAC to sue Hadassah would "set[] a precedent of

allowing [every former and potential future beneficiary] to commence multiple actions against a

charitable trust" and "could create endless litigation, substantially depleting the [corporation's]

assets."[2]  *Lucker v. Bayside Cemetery*, 979 N.Y.S.2d 8, 15 (1st Dep't 2013); *see also Revici v.*

---

[1]  Moreover, as discussed in the Order, the agreement entered into between HAC and Hadassah in 2016 (the "Gift Protocol") defines their relationship as that of a grantor and grantee, and provides that Hadassah maintains complete control and discretion over funds donated to Hadassah and has no obligation to forward them to HAC.  Kurtz Decl., Ex. 4 at 1, ECF No. 29-4 ("[T]he Grantor may, at its sole discretion, notify Grantee of any amounts available to be considered for a Grant, including those donations to Grantor in which specific recommendations of use of donations have been made by the donor to Grantor."); *see also id.* at 6 ("Grantee acknowledges and understands that the award of any Grant does not constitute a promise or guarantee that Grantor shall make any subsequent grants or provide any future funding to Grantee.").

[2]  Indeed, Hadassah has already been "forced to expend [charitable assets] in defending against" HAC's claims in this action.  Def. Opp. at 17.

*Conference of Jewish Material Claims Against Germany Inc.*, 174 N.Y.S.2d 825, 829 (Sup. Ct. Cty. 1958) (noting that charitable "operations would be seriously fettered and chaos might well ensue" if all indefinite or past beneficiaries were "allowed to call [them] to account in court"). The Court, therefore, again rejects HAC's argument that it has standing because it is a class "that is sharply defined . . . and limited in number." Pl. Mem. at 11. HAC is not expressly designated as a beneficiary of Hadassah in Hadassah's chartering documents, and as such, HAC has no special interest in Hadassah's funds sufficient to confer standing. EPTL § 8-1.1(f) clearly and unambiguously directs the Attorney General to protect and enforce the interests and rights of "the beneficiaries of such dispositions for religious, charitable, educational or benevolent purposes." Enforcement of any gifts to Hadassah "is therefore best left to the Attorney General, so as not to expose [Hadassah's] funds to money-draining multiple lawsuits" *Lucker*, 979 N.Y.S.2d at 15.

In short, HAC cites no new law, nor makes any suggestion that the Court "overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion." *See Chepilko v. Cigna Life Ins. Co. of N.Y.*, 952 F. Supp. 2d 629, 631 (S.D.N.Y. 2013). Moreover, HAC's new evidence does not cure the underlying deficiencies previously identified by the Court, so there is no clear error to correct or manifest injustice to prevent. *See Hollander v. Members of Bd. of Regents*, 524 F. App'x 727, 729 (2d Cir. 2013). Standing is limited to the Attorney General except in narrow circumstances not applicable here. Accordingly, HAC's motion for reconsideration is DENIED.

II.    Motion to Amend

A.  Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires."  Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend."  *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  Moreover, "[l]eave to amend need not be granted [] where the proposed amendment would be futile."  *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (internal quotation marks and alteration omitted).  Where, as here, a plaintiff seeks to amend after the entry of judgment, and "the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly."  *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).

HAC also moves to amend under Federal Rule of Civil Procedure 16(b), which provides that scheduling orders "must limit the time . . . to amend the pleadings."  Fed. R. Civ. P. 16(b)(3)(A).  Once it is entered, a scheduling order may be modified only for "good cause."  *Id.* 16(b)(4).  The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  The burden of showing diligence rests on the moving party.  *See id.*  In deciding whether there is

"good cause" to amend under Rule 16(b), however, a trial court may consider not only the diligence of the moving party but also the prejudice to the opposing party. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

B. Analysis

At the outset, the parties disagree about the applicable standard that governs HAC's motion to amend. HAC argues that under Rule 15, leave to amend should be "freely give[n] . . . when justice so requires" and that, in the alternative, under Rule 16(b), a court has discretion to grant leave for good cause. Pl. Mem. at 13. Hadassah, however, contends that a different standard applies to motions requesting amendment of a complaint following the entry of judgment, and that HAC must first have the judgment vacated or set aside under Rules 59(e) or 60(b). Def. Opp. at 9. The Court agrees. As the Second Circuit has held, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). This is so because Rule 15's liberal amendment policy should not be "employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) (internal quotation marks and citation omitted).

For the same reasons that HAC fails to meet its burden with respect to reconsideration under Rules 59(e) and 60(b), HAC falls short of demonstrating why vacatur is necessary to prevent manifest injustice, which dooms its motion for leave to amend the complaint. Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "amendment of a complaint becomes significantly more difficult when a plaintiff waits . . . until

11

after judgment has been entered." *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012); *see also State Trading Corp.*, 921 F.2d at 418.

HAC argues that this standard "cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered." Pl. Reply at 8–9 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (per curiam) (vacating a district court's order denying a postjudgment motion for leave to replead)). However, in *Janese*, a more recent Second Circuit case, the plaintiffs, following the district court's entry of judgment, unsuccessfully moved for reconsideration of the court's dismissal of their complaint and for leave to amend in order to assert their claims with greater particularity. *See Janese*, 692 F.3d at 225. On appeal, the Second Circuit rejected the plaintiffs' argument that the district court had erred in denying them leave to amend. *Id.* at 229. The court reaffirmed the principle that the postjudgment filing of an amended complaint is impermissible "until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Id.* (internal quotation marks and citation omitted). The Second Circuit described the district court's denial of reconsideration as having "render[ed] the motion to amend moot" and concluded that the lower court had "properly denied the motion to amend following its denial of the motion for reconsideration." *Id.* at 225, 229; *accord Smith v. Hogan*, 794 F.3d 249, 256 (2d Cir. 2015) ("[The plaintiff] sought leave to replead only after judgment had been entered. Because he did not succeed in having the judgment vacated, he was not entitled to replead at this stage of the case."). Here, HAC has failed to demonstrate a basis to set aside or vacate the judgment, as described above.[3]

---

[3] Insofar as the Second Circuit's 2011 decision in *Williams* may be read to be in tension on this specific point with its 2012 decision in *Janese* and 2015 decision in *Smith*, noted above, the Court conforms to the Second Circuit's more recent pair of decisions.

In any event, even recognizing that "the liberal spirit of Rule 15 [does not] necessarily dissolve[] as soon as final judgment is entered," *Williams*, 659 F.3d at 214, the Court finds that leave to amend is appropriately denied because amendment would be futile. Leave to amend should only be granted here if HAC alleges new facts such that it now has standing under EPTL § 8-1.1(f). However, nothing in the PFAC demonstrates that HAC has a special interest in Hadassah's funds such that it falls within the narrow exception to the general rule that "standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General." *Alco Gravure*, 64 N.Y.2d at 466. As discussed, under this exception, beneficiaries of charitable funds only have standing if they have "a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number." *Id.* at 465. A "special interest" is "found by looking to the [corporation's] chartering documents to discern the purpose of the [corporation], and whether there is a class of intended beneficiaries that is entitled to a preference." *Sagtikos Manor*, 9 N.Y.S.3d at 82.

Hadassah's governing documents do not support HAC's claim of a special interest in Hadassah's funds. Hadassah's constitution states that it is "dedicated to the ideals of Judaism, Zionism, American democracy, healing, teaching and medical research." Hadassah Const., Levine Decl. Ex. 5 at 1, ECF No. 60-1. It lists five "objects and purposes," *id.* Art. III, and does not "name [HAC] as a beneficiary, nor does it name any beneficiary," *Sagtikos Manor*, 9 N.Y.S.3d at 82. HAC effectively concedes this point, arguing instead that "the issue of standing requires examination of the wills, deeds and other gift instruments pursuant to which donors gave money or property to Hadassah subject to the condition (accepted by Hadassah) that Hadassah remit the funds to HAC alone." Pl. Mem. at 11. However, HAC cites no relevant

legal support for this position,[4] and the Court disagrees based on the plain language of EPTL § 8-1.1(f) and the narrowness of the exception set forth in *Alco Gravure* and its progeny.  Neither a gift agreement between a donor and Hadassah nor a donor's will constitutes Hadassah's "chartering documents" and thus, cannot be considered to determine if HAC—as an entity named in the agreement—has a special interest in Hadassah's funds.  *See Sagtikos Manor*, 9 N.Y.S.3d at 82.  As a mere potential beneficiary of Hadassah's charitable purposes, HAC does not possess any special interest in Hadassah's funds because Hadassah was not organized to support HAC, and HAC is merely one of a number of organizations in Israel that Hadassah has supported over the years.  HAC cannot claim any greater right to Hadassah's assets than other individuals or entities that are "dedicated to the ideals of Judaism, Zionism, American democracy, healing, teaching and medical research."  Hadassah Const. at 1.

Moreover, even if HAC were correct that wills and gift agreements constitute foundational documents, HAC still would not have standing to sue Hadassah for funds donated to Hadassah on HAC's behalf.  *Alco Gravure* and its progeny make clear that whether a donor identified HAC as a beneficiary or honoree in a charitable gift to Hadassah is immaterial, and insufficient, to confer standing.  *See, e.g.*, *In re Alaimo*, 732 N.Y.S.2d 819 (4th Dep't 2001) (holding that "decedent's grandson[,] a person in whose honor the trust was created, lacks standing to challenge petitioners' administration of the trust"); *Lefkowitz v. Lebensfeld*, 417 N.Y.S.2d 715, 720 (1979) (with respect to "gifts to a charitable organization . . . the disposition [will be] enforced by the Attorney General, pursuant to his duty to effectuate the donor's wishes").

---

[4] HAC mentions only *Alco Gravure*, 64 N.Y.2d at 465–66, and *Sagtikos Manor*, 127 A.D.3d at 1057–58, as support for its position.  These cases, however, say nothing of the kind.

In addition, although HAC alleges that Hadassah entered into gift agreements with donors which obligate Hadassah to provide the donated funds to HAC, PFAC ¶¶ 54–62,[5] these gift agreements explicitly state that the funds are donated to Hadassah and it has full discretion as to their utilization:

> Notwithstanding anything to [the] contrary in this Agreement, the gift set forth herein is made by Donor solely to Hadassah, and Hadassah shall have full dominion and control over such gift and absolute discretion as to its utilization. While Hadassah intends to respect the wishes of the Donor with respect to the Fund, this Agreement creates no binding legal obligation upon Hadassah to transfer all or any portion of the Fund or the income therefrom to or for the use or benefit of any other entity or organization.

PFAC Ex. B at H00042260; *id.* at H00042747. In an effort to evade this clear contractual language, HAC contends that section 513(a) of the Not-for-Profit Corporation Law ("N-PCL") provides that although a charitable corporation "shall hold full ownership rights in any assets" given, granted, bequeathed, or devised to the corporation, section 513(b) provides that "the governing board shall apply all assets thus received to the purposes specified in the gift instruments." HAC argues, therefore, that Hadassah cannot use money earmarked for HAC by a donor on another charitable purpose. In support, HAC cites two cases interpreting N-PCL § 513(b), which held that the nonprofit corporations were required to apply assets received to the purposes specified in the gift instruments. *See* Pl. Reply at 6 (citing *In re Friends for Long Island's Heritage*, 911 N.Y.S.2d 412, 417 (2d Dep't 2010); *In re Multiple Sclerosis Serv. Org. of N.Y., Inc.*, 68 N.Y.2d 32, 40 n.5 (1986)). However, these cases do not concern the situation here—where the gift agreements contain an unambiguous limiting clause: that "Hadassah shall

---

[5] The Court also notes that although HAC argues that "Gift Agreements and wills" confirm that HAC has standing, HAC attaches only two gift agreements and one page of one will as exhibits to the PFAC. *See* PFAC Exs. A–M. Because the single page of the incomplete will lacks any details of the conveyance to Hadassah—not to mention a signature—the Court cannot ascertain the intent of the donor and, therefore, this document is of limited value to the Court. *See* PFAC Ex. C.

have full dominion and control over such gift and absolute discretion as to its utilization." PFAC Ex. B at H00042260; *id.* at H00042747.[6]

It is a fundamental precept of contract law that "[w]here the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014). "The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning." *Id.* (internal quotation marks and citation omitted). Here, by the clear and unambiguous terms of the gift agreements, Hadassah is not obligated to forward funds to HAC, but confirm the opposite: that the gifts were made to Hadassah, who has "absolute discretion as to [their] utilization" and "no binding legal obligation [] to transfer all or any portion of the [gifts] for the use or benefit of any other entity or organization." PFAC Ex. B at H00042260; *id.* at H00042747. Indeed, N-PCL § 513(b) contemplates such restrictions, as it provides that "[e]xcept as may be otherwise permitted under . . . section 555 (Release or modification of restrictions on management, investment, or purpose), the governing board shall apply all assets thus received to the purposes specified in the gift instrument." N-PCL § 555(a), in turn, allows a donor to "consent[] in a record" to "release or modify, in whole or in part, a restriction contained in a gift instrument." Here, Hadassah's donors consented in writing to Hadassah's "absolute discretion" over funds donated to it.

---

[6] Additionally, both of these cases were brought by the Attorney General on behalf of beneficiaries, reinforcing the Court's finding that standing to sue lies exclusively with the Attorney General, except under limited circumstances.

Accordingly, HAC's proposed amendments would be futile because they do not cure HAC's lack of standing and, therefore, its motion to amend is DENIED.[7]

## CONCLUSION

For the reasons stated above, HAC's motion for reconsideration and motion to amend are DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 46.

SO ORDERED.

Dated: April 29, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[7] In its motion for reconsideration and motion to amend, HAC also complains that Hadassah improperly claims that documents it produced to HAC in discovery are privileged and were inadvertently produced, and, therefore, seeks to claw back these documents. Pl. Mem. at 21–30. HAC requests that the Court "reject Hadassah's attempt to claw back [these] documents." Pl. Mem. at 30. However, whether or not these documents are privileged is irrelevant to the motions before the Court and adjudication of this request in this order is inappropriate. The Court has reviewed the documents attached as exhibits to the PFAC and declines to take a position on whether these and the 217 pages of documents attached to the Levine Declaration as Exhibit 2 are privileged. Indeed, the vast majority of these documents are neither cited in HAC's memorandum of law nor attached as exhibits to the PFAC (only eleven of the 217 pages are PFAC exhibits). *See* PFAC Exs. B, C, D, G. As such, the Court declines to address this request.